**ALAMO EXPRESS, Inc., et al. v.
BROWN EXPRESS.**
No. 4727.

Court of Civil Appeals of Texas.
El Paso.
May 24, 1950.
Rehearing Denied June 14, 1950.

Maynard F. Robinson, San Antonio, J. L. Lockett, Jr., Houston, Dan Moody, Mac Umstattd, and James H. Rogers, all of Austin, for appellants.

Bobbitt, Brite & Bobbitt, San Antonio, Smith, Rotsch & Steakley, Austin, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Bexar County, 73rd Judicial District, wherein Brown Express Company, hereinafter referred to as plaintiff, recovered a judgment against Alamo Express, Inc., a corporation, and Alamo Freight Lines, Inc., a corporation, hereinafter referred to as defendants, that they be perpetually enjoined and restrained and shall desist from physically and directly serving in intra-state commerce as a common carrier motor carrier the Texas cities and towns of Floresville, Poth, Falls City, Karnes City, Kenedy, Pettus, Normanna, Beeville, Skidmore, Raymondville, Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los Fresnos, Elsa and La Blanca. Under the order defendants were not enjoined and prohibited from interline freight at other points lawfully served by defendants for transportation and delivery into the above named cities and towns by other carriers lawfully serving the above named cities and towns. The order recites it was intended to enjoin defendants from serving the above named cities and towns as a common carrier motor carrier in any manner other than by interline arrangements at other points with carriers lawfully authorized to serve said cities and towns.

The trial was before the court without a jury, and on motion of defendants the trial judge, the Hon. Delos Finch, filed findings of fact and conclusions of law. These findings are somewhat lengthy, but intrinsically evidence a great ability on the part of the trial judge and great care in their preparation. In our opinion the judgment properly disposes of the case and the Findings of Fact and Conclusions of Law clearly and ably demonstrate the reasons therefor. Such Findings of Fact and Conclusions of Law are as follows:

### Findings of Fact by the Court.

"Pursuant to the request of the Defendants, Alamo Express, Inc., and Alamo Freight Lines, Inc., I find the following facts:

"1. Brown Express, Plaintiff herein, is the owner, holder and operator of Certificates of Convenience and Necessity issued by the Railroad Commission of Texas authorizing Brown Express to perform a physical, direct and full common carrier motor carrier service in intrastate commerce, and to traverse the highways required therefor, to the following Texas cities and towns involved in this suit for injunction: Floresville, Poth, Falls City, Karnes City, Kenedy, Pettus, Normanna, Beeville, Skidmore, Raymondville, Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los Fresnos, Elsa and La Blanca.

"2. The above-described operating authority is contained in Master or Consolidated Certificate No. 2329, which was issued by the Railroad Commission of Texas to Brown Express on November 1, 1948, and in Certificates Nos. 3224, 3234, 3087, 2394, 2689, 2000 and 2814, issued by the Railroad Commission of Texas to Brown Express on December 4, 1948, subsequent to the issuance of Certificate No. 2329.

"3. Certificates Nos. 3224, 3234, 3087, 2394, 2689, 2000 and 2814, were issued by the Railroad Commission of Texas under date of December 4, 1948, pursuant to the purchase and acquisition by Brown Express of the operating rights of the Jones Motor Freight Lines and after approval by the Railroad Commission of the sale and transfer of such certificates from Jones Motor Freight Lines to Brown Express.

"4. On December 6, 1948, Brown Express instituted and commenced the performance of a physical and direct common carrier motor carrier service to the following Texas cities and towns, pursuant to the authority contained in the certificates listed above as purchased from Jones Motor Freight Lines; Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los Fresnos, Elsa and La Blanca.

"5. Brown Express, at the time of the filing of this suit for injunction and prior

thereto, had made substantial investments in equipment, facilities and personnel, for the purpose of performing a common carrier motor carrier service to the cities and towns listed in Paragraph 1, above, and paid in excess of $10,000 in cash to Jones Motor Freight Lines in the purchase of the certificates listed in Paragraph 2, above.

"6. The Defendant, Alamo Freight Lines, Inc., is the owner of Certificates of Convenience and Necessity Nos. 2339 and 2870, and various other certificates, including alternate and reroute certificates, issued by the Railroad Commission. On June 26, 1944, the Railroad Commission approved a contract and lease between Alamo Freight Lines, Inc., and J. L. Walker and L. T. Hunt, dba Alamo Express, whereunder Certificates Nos. 2339 and 2870, and various other certificates, were leased to Alamo Express. The partnership of Alamo Express, as lessee, was the predecessor in interest to the Defendant, Alamo Express, Inc. On November 22, 1946, the Railroad Commission approved the substitution of Alamo Express, Inc., as the lessee of said certificates from Alamo Freight Lines, Inc. The Defendant, Alamo Express, Inc., is the operator as lessee, of Certificates Nos. 2339 and 2870, and various other certificates owned by Alamo Freight Lines, Inc., including various alternate and re-route certificates.

"7. H. H. Lawler acquired Certificate No. 2339 by purchase in 1933, and was the owner thereof until September 9, 1942, at which time the Railroad Commission approved the sale and transfer of said certificate and Certificate No. 2870, and various other certificates, from H. H. Lawler dba Alamo Freight Lines, to Alamo Freight Lines, Inc., a corporation. H. H. Lawler was one of the incorporators and was and is the President and controlling stockholder of Alamo Freight Lines, Inc.

"8. Neither H. H. Lawler nor his predecessors in interest, nor Alamo Freight Lines, Inc., his successor in interest, nor Alamo Express, a partnership, and Alamo Express, Inc., the lessees of Alamo Freight Lines, Inc., at any time prior to January 1, 1949, performed or openly and notoriously asserted the right to perform a physical and direct common carrier motor carrier service in intrastate commerce to the Texas cities and towns involved in this suit and listed in Paragraph 1 hereof, and the only service offered or performed to said cities and towns was an interline service at points which H. H. Lawler, his predecessors and successors in interest, were authorized to serve physically and directly, with carriers lawfully authorized to serve physically and directly said cities and towns. At no time prior to January 1, 1949, had either H. H. Lawler or his predecessors and successors in interest transported and delivered, or claimed the right, or threatened to transport and deliver, freight as a common carrier motor carrier into and destined for said cities and towns, or picked up and transported freight from said cities and towns. The interline service performed by H. H. Lawler, his predecessors and successors in interest, to the cities and towns of Floresville, Poth, Falls City, Karnes City, Kenedy, Pettus, Normanna, Beeville and Skidmore, was by interchanging, at the points of San Antonio, Corpus Christi or Alice, Freight destined for said towns with carriers lawfully authorized to serve said cities and towns. The interline service which was performed by H. H. Lawler, his predecessors and successors in interest, to the cities and towns of Raymondville, Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los Fresnos, Elsa and La Blanca, was by interchanging freight with Jones Motor Freight Lines at Harlingen, McAllen or Brownsville, for delivery to the above-named cities and towns by and under the authority of Jones Motor Freight Lines to serve physically and directly said cities and towns.

"9. Sometime after January 1, 1949, the Defendant, Alamo Express, Inc., asserted and claimed the right to serve physically and directly the cities and towns involved in this suit and listed in paragraph 1 hereof, and for the first time commenced to serve, or prepared to serve, and threatened to serve, each and all of said cities

and towns by the performance of a physical and direct intrastate common carrier motor carrier service. Alamo Express, Inc., asserts and claims the right to serve physically and directly said cities and towns under Certificates Nos. 2339 and 2870 only, with the one exception that authority so to serve the city of Beeville is also claimed under Certificate No. 3577 issued by the Railroad Commission on May 23, 1946, to J. L. Walker and L. T. Hunt dba Alamo Express and Alamo Freight Lines, Inc., and under Certificate No. 3105 issued by the Railroad Commission on November 20, 1940, to H. H. Lawler dba Alamo Freight Lines.

"10. Prior to sometime after January 1, 1949, neither the Defendant, Alamo Express, Inc., or its predecessors in interest, nor the Defendant, Alamo Freight Lines, Inc., or its predecessors in interest dating back to the original grandfather applicant and holder of Certificate No. 2339, at any time physically and directly served the cities and towns involved in this suit and listed in Paragraph 1 hereof, or openly and notoriously claimed or asserted the right to serve such cities and towns. Neither Brown Express nor its predecessors in interest to the certificates owned and operated by Brown Express, at any time since 1929 and prior to sometime after January 1, 1949, had any notice from the Defendants, Alamo Express, Inc., and Alamo Freight Lines, Inc., or from their predecessors in interest to the certificates involved in this suit, of any claim or right or authority of said Defendants or their predecessors in interest to serve the cities and towns involved in this suit, or of any adverse user of such certificates in serving said cities and towns. That the acts of the Defendants in serving physically and directly the cities and towns involved in this suit and listed in Paragraph 1 hereof, will divert freight from the Plaintiff, Brown Express, and will reduce freight revenues of the plaintiff, Brown Express, in sums and amounts incapable of exact ascertainment.

"11. Certificate No. 2339 was first and originally issued by the Railroad Commission on September 12, 1929, to San Antonio and Rio Grande Valley Truck Line, which was the assumed name of J. G. Allala. Certificate No. 2870 was originally issued by the Railroad Commission on March 13, 1935, to H. H. Lawler dba Alamo Freight Lines, as a division of the authority contained in Original Certificate No. 2339, after which Certificates Nos. 2339 and 2870, as separate certificates, contained together the same operating authority originally contained in Certificate No. 2339. The division of Certificate No. 2339 was based on an application therefor filed by the owner, H. H. Lawler, two days prior to the issuance of Divided Certificates Nos. 2339 and 2870, and the divided certificates were issued without notice or hearing by the Commission.

"12. The original and first statute in Texas regulating the transportation of property and freight for compensation and hire over the Texas Highways was enacted by the 41st Legislature at its regular session in 1929, same being Chapter 314 of the Acts of this session. [Vernon's Civ.St. art. 911b]. Section 5 of the Act provided that no motor carrier should thereafter operate in the transportation of property for compensation over the highways without first having obtained from the Railroad Commission a certificate declaring that the public convenience and necessity require such operation, with the proviso, known as a grandfather clause, that motor carriers then operating in good faith were authorized to make application to the Commission for a temporary certificate to operate as the carrier had been operating and no more, which certificate would become permanent thirty days after issuance unless a protest to the certificate were filed. Pursuant to the provisions of the 1929 Act, J. G. Allala dba San Antonio and Rio Grande Valley Truck Company, under date of June 21, 1929,—an application with the Railroad Commission for a temporary certificate, commonly known as a grandfather application. The application represented to the Commission that the applicant had been traversing the following state highways in the motor carrier service he had been performing:

" '1. San Antonio to Skidmore, State Highway No. 16.

" '2. Skidmore to Brownsville via Pharr, State Highway No. 12.

" '2. Pharr to McAllen and Mission, State Highway No. 12b.'

"The applicant further represented in said application that 'this line operates from San Antonio to Brownsville, Texas, the first delivering stop being Mathis, Texas, and all intermediate points to Brownsville, Texas, as located on the line of the T & N O Railway. We are also including Mission and points intermediate with Mission and McAllen'.

"The applicant further listed in his routes and schedule the following cities and towns: San Antonio, Skidmore 'No stop for freight', Mathis, Orange Grove, Alice, Falfurrias, Edinburg, Pharr, McAllen, Mission, San Juan, Alamo, Donna, Weslaco, Mercedes, Harlingen, San Benito and Brownsville. In the schedule of rates, the applicant listed the following cities and towns: San Antonio, Skidmore, Mathis, Sandia, Orange Grove, Alice, Ben Bolt, Premont, Falfurrias, Encino, San Manuel, Edinburg, Pharr, McAllen, Mission, San Juan, Alamo, Donna, Weslaco, Mercedes, La Feria, Harlingen, San Benito and Brownsville. The applicant attached to the application five affidavits from shippers in each of which the route of the applicant was variously shown to be 'from San Antonio, Texas, to McAllen, Texas, via Falfurrias, Texas; from San Antonio, Texas, to Brownsville, Texas, via Falfurrias and McAllen; from San Antonio, Texas, to Brownsville, Texas, via Skidmore, Alice, Falfurrias, Mission, Pharr, Harlingen, Texas; from San Antonio, Texas, to Mission, Texas, via McAllen, Texas, and Pharr and Skidmore, Texas.'

"13. Pursuant to the above-described application, the Railroad Commission issued to San Antonio and Rio Grande Valley Truck Line Company a Class 'a' Motor Carrier's Temporary Certificate of Convenience and Necessity dated September 12, 1929, Certificate No. 2339, reading on its face as follows:

" 'This Certifies· that the Railroad Commission of Texas is satisfied that the applicant, San Antonio and Rio Grande Valley Truck Line Company, San Antonio, Texas, 312 Keller Street, was on February 20, 1929, and has since that time been continuously operating a motor propelled vehicle service to the extent of the schedules per below over the public highways hereinafter designated, transporting property for compensation or hire; therefore, the applicant is entitled to and is hereby granted a Temporary Certificate of Convenience and Necessity authorizing the operation of a motor carrier company on the following schedules over the following public highways of Texas:

" 'Highway Nos. ——— from San Antonio to Brownsville and Mission via Skidmore and Pharr.

" 'Schedule:

" 'One Schedule in Each Direction Daily Except Sunday. as more fully appears in application filed herein. This certificate and authority to remain in effect from and after the date hereof, subject to the provisions, limitations and restrictions of Chapter 314, Acts, Regular Session of the Forty-first Legislature, 1929, and of the Rules and Regulations of the Railroad Commission of Texas heretofore prescribed or which may be hereafter prescribed under and pursuant to the authority conferred upon it by law.

" 'This Certificate will become permanent when thirty full days have elapsed, subsequent to the date on which it was issued, if not protested; if protested, it will be subject to a hearing and determination by the Railroad Commission.'

"The certificate form employed by the Commission was a printed form with spaces in blank for application, docket and certificate number, date, name of carrier, highways numbers, signatures of the Commissioners, schedules, and with the concluding reference 'As more fully appears in application filed herein'. The only application filed in connection with the original certificate was the grandfather application of J. G. Allala as above set out, and

no protest was filed to the issuance of the certificate No. 2339.

"14. State Highway No. 16 is now known as U. S. Highway No. 181 between San Antonio and Skidmore; State Highway No. 12 between Skidmore and Brownsville via Pharr is now U. S. Highway No. 59 from Skidmore to Alice, U. S. Highway No. 281 from Alice to Pharr, and U. S. Highway No. 83 from Pharr to Brownsville; State Highway No. 12b from Pharr to McAllen and Mission is now U. S. Highway No. 83. The cities and towns of Raymondville, Lyford, Sebastian, Combes, Santa Rosa, Edcouch, Elsa, Hidalgo, Progreso, Los Indios, Port Isabel, Los Fresnos, Rio Hondo, La Paloma and La Blanca are not located on these highways. The cities and towns of Skidmore, Beeville, Pettus, Normanna, Kenedy, Karnes City, Poth, Falls City and Floresville are points located between San Antonio and Mathis on old State Highway No. 16 and present U. S. Highway No. 181.

"15. The T & N O Railway Lines roughly parallel old State Highway No. 12 and present U. S. Highway 281 to Edinburg and McAllen, and extend east from Edinburg through what are now the cities and towns of San Carlos, La Blanca, Elsa, Edcouch, La Villa, thence to Harlingen through what are now the cities and towns of Santa Rosa and Primera, thence to Brownsville via what are now the cities and towns of Lantan, Lozana, Locoma and Los Fresnos. In 1929 there was no official state highway running east from Edinburg and southeast to Harlingen and the area through which the rail lines extended was sparsely settled and many of the cities and towns located on the rail lines at this time were not established and incorporated in 1929. None of the cities and towns involved in this suit are presently located on the lines of the T & N O Railway except the cities and towns of Santa Rosa, Edcouch, Elsa and La Blanca. The cities and towns of Pharr, San Juan, Alamo, Donna, Weslaco, Mercedes and San Benito, between Edinburg and Brownsville, are not located on the lines of the T & N O Railway but are located on old State Highway No. 12 and present U. S. Highway Nos. 281 and 83.

"16. The original application filed by J. G. Allala doing business as San Antonio and Rio Grande Valley Truck Line, with the Railroad Commission on May 13, 1935, pursuant to which Original Certificate No. 2339 was issued by the Commission did not list or specify or represent to the Commission that the applicant was at that time and had been prior thereto performing a motor carrier service to any of the cities and towns involved in this suit and listed in Paragraph 1 hereof. The application expressly stated and represented that the applicant was not at that time and had not been prior thereto serving the cities and towns of Floresville, Poth, Falls City, Karnes City, Kenedy, Pettus, Normanna, Beeville and Skidmore, it being expressly stated and represented in the application that the first stop for delivery of freight was at Mathis. In the year 1929, the cities and towns of Raymondville, Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Fort Isabel, Los Fresnos, Elsa and La Blanca, were not located on either old State Highway No. 16 or old State Highway No. 12 or on old State Highway No. 12b, said highways being present U. S. Highways No. 181, 59, 281 and 83, and said cities and towns are not now located on present U. S. Highways No. 181, 59, 281 and 83. The original applicant, J. G. Allala, stated and represented to the Commission that he was at that time and had been operating only over old State Highways No. 16, 12 and 12b, and was at that time and had been serving only San Antonio and the cities and towns between Mathis and Brownsville on said highways.

"17. Since the 1929 grandfather application, all applications filed with the Commission and all notices and hearings issued and held by the Commission to and including the time of acquisition by Alamo Freight Lines, Inc., the present owner, of Certificates Nos. 2339 and 2870, involved the sale and transfer, lease or division of Certificates Nos. 2339 and 2870, by and

between the predecessors in interest of the Defendant, Alamo Freight Lines, Inc. The re-issuance of Certificates Nos. 2339 and 2870 by the Railroad Commission at various times since 1929 has been to said Defendant, or its predecessors in interest, in connection with applications to sell, or to lease Certificate No. 2339, or to divide Certificate No. 2339, and to sell or lease Divided Certificates Nos. 2339 and 2870. The re-issuance of Certificates Nos. 2339 and 2870 to said Defendant and its predecessors in interest are shown as to time and text and on certificate forms then in use by the Commission by Plaintiff's Exhibits Nos. 2 through 11, inclusive. In the various re-issuances of Certificates Nos. 2339 and 2870, the Railroad Commission employed a printed certificate form with spaces in blank for the adding of particular matters pertaining to a certificate such as application, docket and certificate number, date, name, highway numbers and the signature of the members of the Commission. The certificate form used by the Railroad Commission until the year 1942 included the reference on its face 'as more fully appears in application filed herein' or 'as more fully appears in printed map and application filed herein'. Sometime prior to the re-issuance of Certificates Nos. 2339 and 2870 in 1942, in the sale and transfer of said certificates from H. H. Lawler dba Alamo Freight Lines to the corporation, Alamo Freight Lines, Inc., the Commission changed the printed blank certificate form which, among other changes, omitted from the face the reference to the application on file. In the original issuance of Certificate No. 2339 the highway route inserted in the blank spaces of the certificate read 'From San Antonio to Brownsville and Mission via Skidmore and Pharr' which was the highway route description appearing on the face of each succeeding re-issuance of Certificate No. 2339. When Certificate No. 2339 was divided into two certificates numbered 2339 and 2870, the highway route designation on the face of Certificate No. 2339 read 'From San Antonio to McAllen via Skidmore and Alice' and the highway designation appearing on the face of the new Cer-

tificate No. 2870 as originally issued and in its re-issuance read 'From Mission to Brownsville via McAllen and Pharr'. The complete highway route appearing in Certificates No. 2339 and 2870, after the division of Certificate No. 2339, was the same highway route which appeared in Certificate No. 2339 prior to its division into two certificates. In the certificate form used by the Commission in 1929 and in all re-issuances of Certificate No. 2339 and 2870 until 1942, there appeared on the face of the certificate form in parentheses the following printed words: '(Other towns and stops on the route and between termini)'. In the new certificate form adopted by the Commission in 1942 and used in the re-issuance of Certificate No. 2339 and 2870 in the sale and transfer of said certificates from H. H. Lawler, dba Alamo Freight Lines, to Alamo Freight Lines, Inc., the foregoing words were omitted, in lieu of which the printed certificate form read 'To operate as a common carrier motor carrier and to render a daily, coordinated motor carrier service in the transportation of commodities generally, to, from and between the cities, towns, villages and communities situated on and along the described portions of the highways and routes below set out, subject to the restrictions below set out, if any'. The certificate form used by the Commission in 1929 also contained on its face the following provision: 'This certificate and authority to remain in effect from and after the date hereof, subject to the provisions, limitations and restrictions of Chapter 314, Acts, Regular Session of the Forty-first Legislature, 1929.' All subsequent certificate forms used by the Railroad Commission until 1942 included on their face the following provision: 'This certificate and authority to remain in effect from and after the date hereof, subject to the provisions, limitations and restrictions of Chapter 314, Acts, Regular Session of the Forty-first Legislature, 1929, as amended at the Regular Session of the Forty-second Legislature, 1931.' The form prescribed by the Commission in 1942 included on its face the following provision: 'This certificate and authority to remain in effect from and

after the date hereof, subject to the provisions, limitations and restrictions of Chapter 314, Acts, Regular Session of the Forty-first Legislature, 1929, as amended at the Regular Session of the Forty-second Legislature, 1931, as amended, Regular Session of the Forty-seventh Legislature, 1941, and as otherwise amended.'

"18. The Defendant, Alamo Express, Inc., as lessee, joined by the Defendant, Alamo Freight Lines, Inc., as lessor, on August 30, 1946, filed a sworn application with the Railroad Commission, in which said Defendants applied for a Certificate of Convenience and Necessity to operate over the highways and to serve the following cities and towns involved in this suit: Raymondville, Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los Fresnos, Elsa and La Blanca. The Railroad Commission conducted hearings on said application on June 18, 19 and 20, on October 27, 28, 29, 30 and 31, and on November 3, 4, 5, 6, 7 and 10, of the year 1947, and by order dated January 14, 1949, the Railroad Commission denied said application of Defendants and found that the public convenience and necessity did not require the service proposed in the application. On March 9, 1949, the Defendants filed another sworn application with the Railroad Commission for authority to serve the above-named cities and towns involved in this suit, in which application an officer of the Defendant, Alamo Express Inc., stated under oath that 'applicant would show that the proposed routes here substantially cover all Valley points not now served by applicant, Alamo Express.' This application was set for hearing by the Railroad Commission on September 20, 1949, and had not been heard at the time of the trial of this case.

"19. The two applications filed by Alamo Express, Inc., as lessee, joined by Alamo Freight Lines, Inc., as owner and lessor, on August 30, 1946, and on September 20, 1949, the facts of which are found in the preceding paragraph, are the only applications filed by said Defendants or their predecessors in interest to Certificate No. 2339, which invoked the jurisdiction of the Railroad Commission to issue notices and hold hearings on the question of whether the public convenience and necessity required an extension or enlargement of the operating authority held and owned by said Defendants and their predecessors in interest. As found in the preceding paragraph, these applications were for a Certificate of Convenience and Necessity to serve the Rio Grande Valley cities and towns involved in this suit and the Railroad Commission denied the application filed by the Defendants under date of August 30, 1946, and has pending before it the second application for such authority, filed on March 9, 1949. There has never been any application filed with the Railroad Commission by the Defendants and their predecessors in interest for a Certificate of Convenience and Necessity authorizing the Defendants or their predecessors in interest to serve the intermediate points between San Antonio and Mathis involved in this suit.

"20. Certificate No. 3577 issued by the Railroad Commission on May 23, 1946, reads as follows: 'To operate: between Houston and Beeville over U. S. Highway 59, and between Victoria and Sinton over U. S. Highway 77, serving no intermediate points and serving no points not now authorized to be served, and connecting and co-ordinating this service with other service of the applicant.' Said Certificate No. 3577 was issued by the Railroad Commission pursuant to Application filed by the partnership of Alamo Express, the successor in interest to Alamo Express, Inc., a corporation, and Defendant herein, and Alamo Freight Lines, Inc., on September 27, 1945, in which application, which was sworn to by J. L. Walker, a partner in Alamo Express, and later an officer of Alamo Express, Inc., it was represented to the Commission:

"'Comes now J. L. Walker and L. T. Hunt, DBA, Alamo Express, lessees of Alamo Freight Lines, Inc. and joined by Alamo Freight Lines, Inc. as such lessor, and files this their amended Exhibit D, and would respectfully show to the Commission that the purpose of this exhibit

is for clarifying Docket 3319, filed as of September 27, 1945, in that that exhibit would purportedly ask for services to Beeville, Texas, however applicants are not now under any certificate serving Beeville but have only a certificate of operating authority through Beeville, Texas, and that the allegations of convenience and necessity and schedules in Exhibit E, on file with the Commission, would remain the same, and that this amended exhibit desires to delete from said original Exhibit D that portion asking for operating authority via U. S. Highway 90 from Houston to San Antonio, and applicants delete in its entirety U. S. Highway 90 from Houston to San Antonio from said application, and that based upon its original filing said applicants would use the following routes without serving any point or places not now served by J. L. Walker and L. T. Hunt, DBA, Alamo Express: From Houston via U. S. Highway 59 to Beeville, serving no intermediate points, but coordinating at Beeville with the present existing operating authority; and from Victoria to Corpus Christi via Sinton over U. S. Highway 77, serving no intermediate points and coordinating with the present existing operating authority heretofore issue—to this applicant.

" 'Applicant alleges and would show to the Commission that the effect of such coordination would be to expedite freight from Houston to Corpus Christi, Falfurrias, Alice, Edinburg, McAllen, Harlingen, Brownsville and other points in the Rio Grande Valley served by lessees as Alamo Express.'

"21. Certificate No. 3105 authorizes the following service:

"*Daily*

"Between Houston and Laredo via Rosenberg, Victoria, Beeville, Skidmore, Alice, San Diego, and Hebbronville and over US HGY. 90 from Houston to Rosenberg and US HGY. 59 from Rosenberg to Laredo, serving no new points not already served by applicant, and operating with closed doors between Rosenberg and Mathis.

"With the following *Restrictions:*

"Applicant may transport over the route from Rosenberg to Beeville, property destined to Mathis and Laredo via Alice, San Diego and Hebbronville and to all points between Mathis and Laredo, but shall not transport over said route property destined to Corpus Christi or to points located in the Rio Grande Valley of Texas; the only property which the applicant will be permitted to transport over that part of the route from Rosenberg to Beeville is property received by applicant at Houston or Rosenberg or points between Houston and Rosenberg on US Hgy. 90 destined to Mathis or Laredo or points between Mathis and Laredo on US Hgy. 59, and property originating at Laredo or Mathis or points between Laredo and Mathis on US Hgy. 59 destined to Rosenberg or Houston or points between Rosenberg and Houston on US Hgy. 90.

"22. Certificates Nos. 3577 and 3105 were issued by the Railroad Commission as alternate or re-route certificates to the primary routes of the Defendants for the purpose of authorizing the Defendants to operate over newer, safer and shorter highways between points which the Defendants were authorized to serve physically and directly under their existing Certificates of Convenience and Necessity.

"23. J. L. Walker is the Vice-President and a stockholder, and was one of the incorporators, of the Defendant, Alamo Express, Inc., and actively participates in the management of the affairs of the corporation. Prior to the formation of Alamo Express, Inc., a corporation, J. L. Walker was an active member of the partnership of Alamo Express. Prior to the formation of the partnership of Alamo Express, J. L. Walker was Vice-President and General Manager of the Defendant, Alamo Freight Lines, Inc. Prior to the formation of Alamo Freight Lines, Inc., a corporation, and since 1938, J. L. Walker had been an active partner and General Manager of the partnership of Alamo Freight Lines, consisting of J. L. Walker, L. T. Hunt and H. H. Lawler, J. L. Walker since 1938 has had

knowledge of and participated in the management of the actual motor carrier operations of H. H. Lawler, dba Alamo Freight Lines, and of the actual motor carrier operations of Alamo Freight Lines, Inc., prior to the lease of Certificates Nos. 2339 and 2870, and other certificates, to the partnership of Alamo Express, and of the actual motor carrier operations of Alamo Express, Inc., as the lessee of said certificates up to the present time.

"24. Louis E. Hart is the President of Alamo Express, Inc., a corporation, and actively participates in its management. Prior to the formation of Alamo Express, Inc., a corporation, Louis E. Hart was a member of the partnership of J. L. Walker and Louis E. Hart doing business as Alamo Express, and actively participated in its management. He has actual knowledge of the motor carrier operations of Alamo Express, Inc., and its predecessor, Alamo Express, a partnership.

"25. The Defendants, Alamo Express, Inc., and Alamo Freight Lines, Inc., assert and claim the right to serve physically and directly in intrastate commerce as a common carrier motor carrier the Texas cities and towns involved in this suit and listed in Paragraph 1 hereof, and were at the time of the filing of this injunction suit so serving, or preparing to serve, or threatening to serve, said cities and towns. Said Defendants ceased and desisted from serving said cities and towns after service upon them of the temporary restraining order issued herein and continued to cease and desist therefrom after the issuance of the temporary injunction granted herein. On April 11, 1949, prior to filing this suit, the Plaintiff, Brown Express, filed with the Railroad Commission of Texas two motions requesting said Commission to review Certificates No. 2339 and 2870, and to construe the authority of the Defendants, Alamo Express, Inc., and Alamo Freight Lines, Inc., thereunder. The Defendants, Alamo Express, Inc., and Alamo Freight Lines, Inc., did not cease and desist from serving the cities and towns involved in this suit upon the filing of said motions with the Railroad Commission by Brown Express. The injunction suit filed herein by the Plaintiff,

Brown Express, was filed on April 26, 1949, on which date a temporary restraining order was granted Plaintiff, and the application of Plaintiff herein for a temporary injunction was heard on April 29 and 30, and May 2 and 3, at the conclusion of which a temporary injunction was granted Plaintiff. On May 5, 1949, the Defendants herein, Alamo Express, Inc., and Alamo Freight Lines, Inc., filed with the Railroad Commission a plea to the jurisdiction of the Commission to hear the motions of Plaintiff, Brown Express, which had been previously filed on April 11, 1949, in which plea to the jurisdiction of the Commission it was prayed that the motions of Brown Express be dismissed for lack of jurisdiction for the reasons, among others, that Plaintiff herein had invoked the jurisdiction of this court in its suit for injunction in response to which this court had issued a temporary restraining order and a temporary injunction. The Railroad Commission has not acted on either the motions of Brown Express or on the plea of Alamo Express, Inc., to the jurisdiction of the Commission to act thereon. Upon the trial of Plaintiff's suit for a permanent injunction the officers of the Defendant, Alamo Express, Inc., testified and stated to this court under oath that the Defendant, Alamo Express, Inc., would not resume the common carrier motor carrier service from which they were enjoined by temporary restraining order and temporary injunction issued herein, and from which the Plaintiff is seeking to enjoin said Defendant in its suit for permanent injunction, until the Railroad Commission had acted upon the motions of Brown Express as above found, and that said Defendant would abide by the future action of the Railroad Commission on said motions.

"26. This suit for injunction was filed by the Plaintiff, Brown Express, on April 26, 1949, on which date the Honorable James M. Williamson, presiding as Judge of the 37th Judicial District Court of Bexar County, granted Plaintiff a temporary restraining order as prayed for in Plaintiff's Original Petition, and set the application of Plaintiff for a temporary injunction for hearing on the 29th day of April, 1949. The hearing on the application of Plaintiff

for temporary injunction proceeded from day to day on the 29th and 30th days of April, and on the 2nd and 3rd days of May, after which, by order and decree signed and filed on the 3rd day of May, 1949, the Honorable James M. Williamson, presiding as Judge of the 37th Judicial District Court, granted Plaintiff a temporary injunction against the Defendants as prayed for in Plaintiff's Original Petition, which temporary injunction enjoined the Defendants from physically serving in intrastate commerce the following Texas cities and towns: Floresville, Karnes City, Kenedy, Beeville, Skidmore, Raymondville, Combes, Santa Rosa, Edcouch, Elsa, Hidalgo, Progreso, Rio Hondo, Port Isabel, Los Fresnos, and La Blanca. The order and decree granting the temporary injunction expressly recited that it would remain in force and effect until the conclusion of the hearing and trial of Plaintiff's application and suit for a permanent injunction. On the 1st day of September, 1949, more than seven days prior to the setting of the hearing on Plaintiff's application for a permanent injunction, Plaintiff filed herein its First Amended Original Petition, which was verified, and in which Plaintiff sued for an injunction with respect to the cities and towns of Poth, Falls City, Pettus, Normanna, Sebastian, Lyford, Los Indios and La Paloma, in addition to and including those named in Plaintiff's Original Petition. The cities and towns of Poth, Falls City, Pettus and Normanna, are intermediate points between San Antonio and Mathis and are located on the same route and highway as the cities and towns of Floresville, Karnes City, Kenedy, Beeville and Skidmore, which cities and towns are also intermediate points between San Antonio and Mathis. The cities and towns of Sebastian, Lyford, Los Indios and La Paloma, are points located in the Rio Grande Valley counties of Willacy and Cameron, and are not located on old State Highways 16, 12 or 12b, or on present U. S. Highway 181, 59, 281 and 83, as is likewise true of the following cities and towns listed in Plaintiff's Original Petition: Raymondville, Combes, Santa Rosa, Edcouch, Hidalgo, Progreso,

Rio Hondo, Port Isabel, Los Fresnos, Elsa; and La Blanca."

Conclusions of Law by the Court.
"I Conclude:

"1. The cause of action alleged in Plaintiff's First Amended Original Petition is the same cause of action as that alleged in Plaintiff's Original Petition. Plaintiff's First Amended Original Petition was filed in sufficient time to give the Defendants full opportunity for answer, and the law and the facts with respect to the additional cities and towns named in Plaintiff's First Amended Original Petition are the same as the law and facts with respect to the cities and towns named in Plaintiff's Original Petition and in the temporary injunction granted by Honorable James M. Williamson, presiding as Judge of the 37th Judicial District Court of Bexar County, Texas. The filing by Plaintiff of its First Amended Original Petition had no legal effect upon, and did not entitle the Defendants to a dissolution of, the temporary injunction theretofore granted and issues. The temporary injunction by its terms remained in force and effect only until the conclusion of the hearing and trial of the application of Plaintiff for a permanent injunction.

"2. The suit of Plaintiff, Brown Express, against the Defendants, Alamo Express, Inc., and Alamo Freight Lines, Inc., in this cause is not an attack upon, nor an appeal from, any act, order or ruling of the Railroad Commission of Texas, within the purview of Section 20 of Article 911b of Vernon's Annotated Texas Civil Statutes. This suit was brought by Plaintiff for the purpose of preventing and enjoining further violations by the Defendants of final orders and certificates of the Railroad Commission.

"3. The Plaintiff, Brown Express, was and is entitled to resort to a court of equity to restrain and enjoin the Defendants from operating in excess of the authority granted the Defendants in the certificates issued by the Railroad Commission which are held and owned by the Defendants, and the suit of Plaintiff is in the same

category as a suit to enjoin common carrier motor carrier operations for compensation or hire over the highways of Texas without any certificate or authority from the Railroad Commission.

"4. This Court has jurisdiction of Plaintiff's suit herein and has jurisdiction to consider and construe the legal effect of the orders of the Railroad Commission and the Certificates of Convenience and Necessity issued by the Commission and held and owned by the Defendants, and to enjoin the Defendants from violating the terms of the orders of the Railroad Commission and the certificates issued by the Railroad Commission and held and owned by the Defendants.

"5. The jurisdiction of this Court is not affected or ousted by reason of the fact that there was pending before the Railroad Commission, at the time of the filing of Plaintiff's suit herein, a motion or motions filed by Plaintiff, Brown Express, requesting the Railroad Commission to review the certificates held and owned by the Defendants and to construe the authority of said Defendants thereunder. The Railroad Commission does not sit as a court to construe the effect of its final orders or of certificates issued by the Commission and any interpretation by said Commission of the meaning, force and effect of such final orders and certificates would not be binding upon the courts and would constitute only an opinion as to the rights of the parties. The Railroad Commission does not exercise or have the power of enforcement of its opinions or interpretations of its final orders and certificates as possessed and exercised by the courts of Texas, and to which the Plaintiff is entitled.

"6. The Plaintiff, Brown Express, has lawful authority to serve physically and directly in intrastate commerce, as a common carrier motor carrier, the cities and towns involved in this cause, and has the right to resort to a court of equity for injunctive relief to restrain and enjoin the Defendants from operating in excess of certificates issued by the Railroad Commission and held and owned by them, with respect to said cities and towns, and to prevent the further and continued violations by

Defendants of final orders and certificates issued by the Railroad Commission.

"7. Injury to the business of Plaintiff, Brown Express, is a necessary consequence of unlawful competition to cities and towns lawfully served by the Plaintiff, and such injury is one which cannot be ascertained with certainty in fixed sums of money and is irreparable. The Plaintiff, Brown Express, will suffer a diversion of freight revenues in amounts which are incapable of exact ascertainment and will be irreparably injured as a result of the unlawful competition of Defendants to the cities and towns involved in this cause and Plaintiff does not have an adequate remedy at law from the injury and damages which it will suffer from the unlawful acts of the Defendants.

"8. The Railroad Commission of Texas is authorized, under Article 911b, Vernon's Annotated Civil Statutes, to grant Certificates of Convenience and Necessity to common carrier motor carriers authorizing the transportation of property for compensation or hire over the highways of Texas and to the cities and towns of Texas in intrastate commerce, upon application therefor to the Commission, the issuance of notice to interested parties, the holding of a hearing upon the application, and the finding by the Railroad Commission that the public convenience and necessity require the operations proposed by the applicant. The Railroad Commission is not authorized or empowered by the statutes of Texas to issue Certificates of Convenience and Necessity to any motor carrier authorizing the performance of a common carrier motor carrier service for compensation or hire over the Texas highways and to Texas cities and towns, except upon the basis of application, notice, hearing and a finding by the Commission that the public convenience and necessity require such operations.

"9. The Original Texas Motor Carrier Act, enacted by the 41st Legislature in 1929, prohibited motor carrier operations for the transportation of property for compensation or hire over the public highways without the motor carrier first having obtained from the Railroad Commission a certificate declaring that the public convenience and

necessity require such operation. Said Act further provided that any motor carrier who had been continuously operating a motor vehicle in good faith over particular highways since February 20, 1929, could apply for a temporary certificate to operate just as said carrier shall have been operating during said period and no more. Temporary certificates issued pursuant to such an application would become permanent unless a protest against same were filed within thirty days after the granting of the temporary certificate. The Railroad Commission was empowered and authorized by the 1929 Act to grant a temporary certificate authorizing operations only to the extent that the applicant therefor had been previously operating as shown in the application filed by such carrier. The 42nd Legislature in 1931 amended the 1929 Act and enacted what is now Article 911b, Vernon's Annotated Civil Statutes, with certain amendments not pertinent here, which amendatory Act authorized the Railroad Commission to issue, without application or hearing, new Certificates of Convenience and Necessity to motor carriers then lawfully operating under permanent certificates theretofore issued to them. The Commission was empowered to issue such certificates without application or hearing to the extent only of the operating authority contained in the certificates issued pursuant to the 1929 Act, and the Commission was expressly prohibited from issuing new certificates authorizing any operations in excess of, in extension of, or as an enlargement of the operating authority contained in the certificates issued by the Commission pursuant to the terms of the 1929 Act.

"10. The application filed by J. G. Allala, doing business as San Antonio and Rio Grande Valley Truck Line, with the Railroad Commission under date of June 21, 1929, was filed pursuant to the terms and provisions of the 1929 Act, and for the purpose of obtaining a temporary certificate pursuant to the provisions of said Act. Said application alleged and represented that the applicant had been performing a motor carrier service over State Highway No. 16 from San Antonio to Skidmore, over State Highway No. 12 from Skidmore to Brownsville, and over State Highway No. 12b from Pharr to McAllen and Mission. The applicant further alleged and represented to the Commission that he had not been operating a motor carrier service to cities and towns on State Highways No. 16 and 12, between San Antonio and Mathis. The applicant alleged and represented to the Commission that he had been performing a motor carrier service only to the city of San Antonio and the cities and towns located on State Highway No. 12 and 12b. Upon the basis of said application the Railroad Commission of Texas was empowered and authorized by the terms and provisions of the 1929 Act to grant said applicant a temporary certificate to operate over State Highways Nos. 16, 12 and 12b, and to serve only San Antonio and the cities and towns located on State Highway No. 12 between Mathis and Brownsville, and on State Highway No. 12b from Pharr to McAllen and Mission. Under said application the Railroad Commission could not have lawfully granted the applicant authority to serve the cities and towns located on State Highway No. 16 and No. 12, between San Antonio and Mathis, and could not have lawfully granted the applicant authority to serve any cities and towns, or to traverse any highways necessary therefor, not located on State Highways No. 16, 12 and 12b. This Court will assume that the Railroad Commission, in the issuance of the temporary certificate pursuant to the terms and provisions of the 1929 Act and of the application filed thereunder by J. G. Allala, intended to do that which it was lawfully empowered and authorized to do, and that the operating authority contained in the temporary certificate No. 2339, issued to San Antonio and Rio Grande Valley Truck Line Company under date of September 12, 1929, authorized common carrier motor carrier operations as alleged and represented and applied for in said application and no more. This Court is required to review and consider the application of J. G. Allala for a temporary certificate pursuant to the terms and provisions of the 1929 Act, including the proof of former service rendered by him, the schedule of service filed with the

application, and the schedule of rates filed therewith, together with all exhibits attached to the application showing the cities and towns which the applicant had been serving and was applying for a certificate to serve, together with the routes used by the applicant in performing such service. In the temporary certificate issued pursuant to said application, the Railroad Commission failed to include any intermediate points between San Antonio and Mathis on State Highways No. 16 and 12, which amounted to a denial to the applicant of the right to perform a common carrier motor carrier service to said points. Certificate No. 2339, issued by the Railroad Commission under date of September 12, 1929, did not authorize the holder thereof to perform a common carrier motor carrier service to intermediate points between San Antonio and Mathis on State Highways No. 16 and 12. The application filed by J. G. Allala under the 1929 Act did not relate to or seek a certificate authorizing common carrier motor carrier operations to any city or town or over any highways other than the cities and towns located on State Highways No. 16, 12 and 12b, and Certificate No. 2339 issued pursuant thereto under date of September 12, 1929, did not authorize the holder thereof to serve the cities and towns of · Raymondville, Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los· Fresnos, Elsa and La Blanca, none of which is or was located on State Highways No. 16, 12 and 12b, and present U. S. Highways No. 181, 59, 281 and 83, and none of which was included in said certificate.

"11. ˙ Temporary certificate No. 2339, issued to San Antonio and Rio Grande Valley Truck Line Company on September 12, 1929, became permanent thirty days after its issuance. Certificate No. 2339 issued by the Railroad Commission to San Antonio and Rio Grande Valley Truck Line Company under date of August 22, 1931, was issued pursuant to the provisions of Section 5 of the Act of the 42nd Legislature in 1931 amending the 1929 Act, under the provisions of which the 1931 certificate authorized the ·same common carrier motor carrier operations as were authorized in Certificate No. 2339 issued under date of September 12, 1929, pursuant to the 1929 Act and the application of J. G. Allala doing business as San Antonio and Rio Grande Valley Truck Line Company.

■ "12. All and succeeding issuances by the Railroad Commission of Certificate No. 2339 and of Certificate No. 2870, which contained a portion of the authority originally contained in Certificate No. 2339, were based upon and in response to applications of the holder thereof for sale and transfer, or for division of Certificate No. 2339 into two certificates numbered 2339 and 2870, or to lease said certificates. No application filed with the Railroad Commission pertaining to said certificates subsequent to the original application of J. G. Allala pursuant to the provisions of the 1929 Act, to and including the transfer of the certificates to the Defendant, Alamo Freight Lines, Inc., was for the purpose of increasing, extending or enlarging the operating rights originally granted by the Commission in Certificate No. 2339 issued on September 12, 1929. All succeeding issuances of Certificates No. 2339 and No. 2870, since 1929, contained and granted operating authority in accordance with the authority granted in the original certificate. The Railroad Commission, in the succeeding issuances of Certificates Nos. 2339 and 2870, could not have lawfully granted any increase, extension or enlargement of the operating authority contained in Original Certificate No. 2339, for the reason that no application had been filed with said, Commission therefor and the Commission at no time issued notices, conducted hearings, or considered the question of whether the public convenience and necessity required an increase, extension or enlargement of the operating authority contained in Original Certificate No. 2339. The granting of any increase, extension or enlargement of the operating authority contained in Original Certificate No. 2339 by the Railroad Commission in the succeeding issuances of Certificates Nos. 2339 and 2870, would be void and of no force and effect to the extent of such an increase, extension or enlargement of operating authority.

"13. The reissuance of Certificates No. 2339 and 2870 by the Railroad Commission to Alamo Freight Lines, Inc., under date of October 14, 1942, pursuant to an application for the approval of the sale and transfer of said certificates from H. H. Lawler, and individual, to his newly-formed corporation, Alamo Freight Lines, Inc., and the use by the Commission of a different blank certificate form with changes in terminology and references from the previous forms used by the Commission since 1929, transferred to the corporation only the operating authority held and owned by H. H. Lawler, an individual, under said certificates, and cannot be given the legal effect of increasing, extending or enlarging the authority transferred to Alamo Freight Lines, Inc. The Railroad Commission was without power or authority to grant additional authority by means of the use of a new certificate form since no application had been filed therefor, no notices were issued or hearing held, and there was no finding by the Commission that the public convenience and necessity required the operations of Alamo Freight Lines, Inc., to any cities or towns or over any highway routes not already authorized in the certificates transferred from H. H. Lawler, an individual, to Alamo Freight Lines, Inc. The granting of any increase, extension or enlargement of the operating authority contained in the transferred certificates would be void and of no force and effect to the extent of such increase of authority and would amount to no more than an opinion of the Commission of the authority contained in the transferred certificates which would not be binding upon the Court.

"14. This Court has the power and is under the duty to construe Certificates No. 2339 and 2870 from a consideration of the entire history of proceedings before the Railroad Commission, and the Acts and orders of said Commission, for the purpose of deciding the question of whether the acts and operations of the Defendants in instituting, sometime after January 1, 1949, a physical and direct intrastate common carrier motor carrier service to the cities and towns involved in this suit are authorized by said certificates, and whether

or not said acts of the Defendants constitute a violation of the orders of the Railroad Commission and the certificates issued by said Commission.

"15. This Court has the power and is under the duty of construing any other certificates held and owned by the Defendants and claimed by said Defendants to authorize a physical and direct service to any or all of the cities and towns involved in this suit.

"16. As construed by this Court the Defendants, Alamo Express, Inc., and Alamo Freight Lines, Inc.. do not have legal and lawful authority under Certificates Nos. 2339 and 2870, or under any other orders or certificates of the Railroad Commission, or under any other character of right or authority, to serve physically and directly, in intrastate commerce, as a common carrier motor carrier any of the cities and towns involved in this suit, namely Floresville, Poth, Falls City, Karnes City, Kenedy, Pettus, Normanna, Beeville, Skidmore, Raymondville, Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los Fresnos, Elsa and La Blanca.

"17. The Defendants, Alamo Express, Inc., and Alamo Freight Lines, Inc., did not, prior to sometime after January 1, 1949, physically and directly serve the cities and towns involved in this suit openly and notoriously in such a manner and to such an extent as to constitute notice to Plaintiff, or its predecessors in interest, of any claim of said Defendants of the right to serve physically and directly said cities and towns. There was no adverse user by the Defendants of the certificates held and owned by them against the Plaintiff and its predecessors in interest until sometime after January 1, 1949. The acts of the Defendants and their predecessors in interest in interlining freight with other carriers lawfully authorized to serve the cities and towns involved in this suit was lawful and did not constitute an open and notorious adverse claim on the part of the Defendants and their predecessors in interest of the right, and user of such right, to serve

physically and directly said cities and towns in intrastate commerce as a common carrier motor carrier. None of the acts of Defendants and their predecessors in interest in filing schedules, insurance and bonds and in registering their motor carrier equipment with the Railroad Commission constituted an adverse claim on the part of said Defendants and their predecessors in interest of their right so to serve said cities and towns.

"18. The plea of limitations is unavailing to the Defendants because neither they nor their predecessors in interest for a period of twenty years had at any time prior to sometime after January 1, 1949, physically and directly served the cities and towns involved in this suit and had not, by any open and notorious act or assertion of a claim or right, given notice to the Plaintiff, Brown Express, or its predecessors in interest, of any claim or user of the certificates involved in this suit of the right of the Defendants and their predecessors in interest to serve said cities and towns.

■ "19. The defense of bona fide or innocent purchaser is unavailing to the Defendant, Alamo Express, Inc., because said Defendant at no time between November 22, 1946, the date on which the corporation Alamo Express, Inc., was substituted as lessee by order of the Railroad Commission, until sometime after January 1, 1949, asserted or claimed the right to serve said cities and towns under the certificates leased from Alamo Freight Lines, Inc., or commenced any adverse user thereof. The same is true of the predecessors in interest of Alamo Express, Inc. Further, J. L. Walker, one of the incorporators and active managers of Alamo Express, Inc., was an active partner and officer of its predecessors in interest to the year 1938, and as such had actual knowledge and notice of the operations of the owners and holders of the certificates owned by the Defendant, Alamo Freight Lines, Inc., and leased to the Defendant, Alamo Express, Inc.

"20. The cause of action of the Plaintiff herein did not arise until after January 1, 1949, at which time the Defendants for the first time commenced physically and directly serving the cities and towns involved in this suit, and at which time said Defendants for the first time openly and notoriously asserted the claim and right to engage in such motor carrier operations and for the first time commenced an adverse user of the certificates involved in this suit against the Plaintiff, Brown Express.

■ "21. The plea of laches is unavailing to the Defendants because it was sometime after January 1, 1949, when Plaintiff first had notice of any adverse claim and user by the Defendants, and the filing of this suit on April 26, 1949, was within a reasonable time. There was no delay which worked to the disadvantage of Defendants, or to their injury, or which brought about any change in their position.

■ "22. The sworn statements of J. L. Walker and Louis E. Hart, officers of the Defendant, Alamo Express, Inc., in their testimony before the Court on the hearing of Plaintiff's application for a permanent injunction that said Defendant would not resume the acts from which it was enjoined by temporary injunction issued herein and from which it was sought to be enjoined by a permanent injunction herein, until the Railroad Commission has acted on the motions of Brown Express that the Commission construe the certificates held and owned by said Defendant, and would abide by the opinion of the Railroad Commission when issued, does not constitute such a tender or agreement, or confession of judgment which would defeat the right of Plaintiff to the injunctive relief applied for in Plaintiff's suit for a permanent injunction. Any interpretation given by the Railroad Commission in response to the motions of Brown Express pending before it would be advisory only and would not be binding on this or any other Court. The time and nature of any opinion which might be rendered by the Railroad Commission is indefinite and uncertain, and any opinion rendered by the Railroad Commission in the premises would not afford Plaintiff the relief to which Plaintiff is entitled to prevent the Defendant, Alamo Express, Inc., and the Defendant, Alamo Freight Lines, Inc., from operating in excess of the

authority of Certificates Nos. 2339 and 2870, and of other certificates held or owned by Defendants, and in prohibiting said Defendants from further violations of orders and certificates of the Railroad Commission."

Additional Findings of Fact.

"Pursuant to the request of the Defendant, I find the following additional facts which I consider proper:

"A. In addition to the findings in Paragraph 12 of my original Findings of Fact, I find that the application filed by J. G. Allala, doing business as San Antonio and Rio Grande Valley Truck Line Company, under date of June 21, 1929, contained the following statements:

" 'In accordance with your recent order, we will continue to operate, in so far as the assessment of rates and charges are concerned, under our present schedule of ratings and rates which are those as provided in Consolidated Freight Classification Number Five and Texas Lines Tariff Number Sixty, observing in every respect the rules, regulations and rates as provided in these two issues'.

"(See Plaintiff's Exhibit 1, page 9.) Consolidated Freight Classification Number Five is a statement of various classifications of freight, and Texas Lines Tariff number Sixty names towns and stations on and along the railroads of Texas, and prescribes rates and ratings for various classifications of freight. The applicant did not list in said application any county roads, if any, over which he was operating. There was in existence at the time of said application a county road extending eastward from Edinburg, roughly paralleling the line of the T. & N. O. Railway to Harlingen, through what are now the towns and communities of La Blanca, San Carlos, Elsa, Edcouch, La Villa, Primera, Santa Rosa and Combes.

"B. Prior to the year 1939, the Railroad Commission of Texas did not exercise jurisdiction over county roads which were not a part of the Texas State Highway system.

"C. In 1933, H. H. Lawler and Jones Motor Freight Line entered into a lease arrangement which continued until mid-1940 (See Defendant's Exhibits 4, 5 and 6). Under this lease arrangement, H. H. Lawler operated between the termini of San Antonio and McAllen, and Jones Motor Freight Line operated over various routes in the Rio Grande Valley. At the inception of said lease arrangement and at all times material thereto, said Jones Motor Freight Line also owned in its own name a Certificate or Certificates of Public Convenience and Necessity issued by the Railroad Commission authorizing service to the towns of La Blanca, San Carlos, Elsa, Edcouch, La Villa, Primera, Santa Rosa, Harlingen and numerous other cities and towns in the Rio Grande Valley, including points on present U. S. Highway 83 between Mission and Brownsville. Sometime in 1938 or 1939, H. H. Lawler and Jones Motor Freight Line began interlining freight at Harlingen as well as at McAllen, and this continued until mid-1940, when such lease arrangements were cancelled. During a period of approximately nine months, during the year 1940, Plaintiff made and entered into an agreement with Jones Motor Freight Line whereby the latter performed the physical transportation service of freight into and out of certain towns and communities within the Rio Grande Valley which freight was destined to towns and communities theretofore served and authorized by the Railroad Commission to be served by Plaintiff, and Plaintiff thereupon ceased to make actual pickup or delivery of freight within said towns and communities, Plaintiff delivering to or receiving from Jones Motor Freight Line at other towns (Harlingen or McAllen) all freight moving over Plaintiff's line into the Rio Grande Valley and destined to any of the first mentioned towns or communities or originating thereat and destined to points along Plaintiff's routes or beyond. This arrangement continued for a period of approximately nine months, after which it was cancelled in all respects and Brown Express resumed a direct and physical service to all points in the Rio Grande Valley which Plaintiff was authorized to serve. There were no complaints made or received by the Railroad Commission during the time of the lease

arrangements between H. H. Lawler and Jones Motor Freight Line, and the time of the lease arrangements between the Plaintiff and Jones Motor Freight Line.

"D.   In February, 1949, Plaintiff's manager of its Rio Grande Valley operations saw one truck of the Defendant, Alamo Express, loading and receiving freight at the town of Elsa, and thereafter, in April, 1949, Defendant, Alamo Express, started its own delivery service, its customers being told that Defendant, Alamo Express, was going to make early deliveries to that area. Defendant, Alamo Express, began delivery with its own equipment into the towns between San Antonio and Skidmore in the latter part of March and early April, 1949. On April 11, 1949, Plaintiff and other carriers filed with the Railroad Commission (Defendant's Exhibit 7) two petitions which involved different routes and cities and towns under Certificates 2339 and 2870, as follows:

"Petition by Brown express, et al., to the Railroad Commission of Texas to reissue common carrier motor carrier Cert. No. 2339 belonging to Alamo Freight Lines, Inc., under lease to Alamo Express, and to replace in said cert. a restriction to prohibit service to intermediate pts. Between San Antonio and Mathis over State Highway 16 and old State Highway 12;  Brown Express being an interested carrier in that they now serve the pts. involved under authority from the Railroad Commission of Texas;  & further that the contention is made that Alamo Freight Lines, Inc., & Alamo Express have not been rendering service to those pts. under Cert. 2339 & the hearing is for correction and reformation of the Cert., as well as the alternative of the amendment of the Cert. in the matter of cancellation of authority to serve pts. between San Antonio & Mathis, for failure to operate, in that the carriers have not served these pts. in the past.

"Petition by Brown Express to the Railroad Commission of Texas to review its records & files relating to Cert. No. 2339 belonging to Alamo Freight Lines and under lease to Alamo Express, and to reissue said Cert. & specify the highways over which the carrier may properly and lawfully operate and to specify the pts. which may be served in the counties of Willacy, Hidalgo & Cameron;  Brown Express being an interested carrier in that it serves over the highways & in the territory involved; and inasmuch as the cert. was issued many years ago, the Commission deems it necessary to reform the certificate so as to give the correct highway descriptions, which will conform to the route given under cert. 2339 at the time of its issuance.

"The Railroad Commission had not set the foregoing petitions for hearing when this suit was filed by the Plaintiff on April 26, 1949, and had not issued or served upon the defendant, Alamo Express, any notice of a hearing thereon, and the Commission had not assigned said petitions for hearing or conducted a hearing thereon at the time this suit was filed.

"E.   That at all times material to this litigation Defendants and their predecessors in interest owning and operating Certificates 2339 and 2870 have provided insurance and have secured necessary Railroad Commission licenses and cards in connection with their motor truck operations.

"F.   That pursuant to lease agreement (Plaintiff's Exhibit 16) Defendant, Alamo Express, for a cash consideration of approximately $36,000.00 and a reserved rental of one cent per hundred pounds of freight transported by lessee, leased from and Defendant, Alamo Freight Lines, Inc., leased to Alamo Express, Inc., a number of motor carrier certificates, among them being the two certificates here involved, Certificates Nos. 2339 and 2870.

"G.   The term 'Interline service', as used in the Common Carrier Motor Carrier Industry, refers to an operation on which freight is picked up by one carrier at a point which it is authorized to serve, and transported to another point on the authorized routes of said carrier, and there transferred to another carrier for delivery to destination;  the destination point may or may not be a point which the originating carrier is authorized to serve.

"H.   In 1932 or 1933 there was in existence an undesignated county road running

east from a point on present U. S. 281 known as Red Gate (located north of Edinburg and south of Alsonia, and a few miles north of Faysville) easterly to Raymondville, which was used as a cut-off road from U. S. 281 to Raymondville.

"I. Serving each town or community involved in this action is at least one other rail or motor common carrier besides Plaintiff and in substantially all of these towns and communities there is more than one other rail or motor common carrier besides Plaintiff serving or offering to serve. .

"J. Brown Express, Plaintiff herein, obtained authority to serve the following cities and towns involved in this suit in the purchase of Certificates Nos. 3224, 3234, 3087, 2394, 2689, 2000 and 2814 (Plaintiff's Exhibits Nos. 39–45, inclusive), which certificates were reissued to Brown Express by the Railroad Commission under date of December 4, 1948; Raymondville, Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgoo Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los Fresnos, Elsa and La Blanca. Plaintiff has been directly and physically serving these cities and towns since December 6, 1948.

"K. The operating authority contained in Master or Consolidated Certificate No. 2329 issued to Brown Express by the Railroad Commission on November 1, 1948, was a consolidation into one certificate of the operating authority contained in numerous separate certificates previously issued to Brown Express and to its predecessors in interest. Brown Express and its predecessors in interest have for many years physically and directly served the cities and towns of Floresville, Poth, Falls City, Karnes City, Kenedy, Pettus, Normanna, Beeville and Skidmore, as well as other cities and towns to which said certificates authorize service, since the granting of the original grandfather certificate to a predecessor in interest in 1929. Jones Motor Freight Line, the predecessor in interest of Brown Express to Certificates Nos. 3224, 3234, 3087, 2394, 2689, 2000 and 2814, had for many years physically and directly served, as a common carrier motor carrier, the cities and towns of Raymondville,

Combes, Sebastian, Lyford, Santa Rosa, Edcouch, Hidalgo, Progreso, Rio Hondo, Los Indios, La Paloma, Port Isabel, Los Fresnos, Elsa and La Blanca. The operating authority owned and held by Brown Express is shown in Plaintiff's Exhibit No. 38, which is a certificate issued by the Railroad Commission on November 1, 1948, containing a consolidated listing of the authority contained in various individual certificates owned and held by Brown Express, and in Plaintiff's Exhibits 39–45, inclusive, which are the certificates purchased by Brown Express from Jones Motor Freight Line. The issuance by the Railroad Commission to Brown Express of Consolidated Certificate No. 2329 was not for the purpose of, and did not have the effect of, adding to or taking from, or in any way affecting, the operating authority owned and held by Brown Express in various individual Certificates of Public Convenience and Necessity, but was done for the purpose of combining and consolidating in one certificate the operating authority contained in the various separate certificates. It is a policy of the Commission to consolidate separate certificates into one master certificate at the request of the owner and holder thereof, and no hearing is held on such request. The Railroad Commission issues a Master or Consolidated Certificate in such cases based on the authority contained in each separate certificate and combines in the Consolidated Certificate the exact authority contained in the separate certificates. The Plaintiff, Brown Express, does not claim any operating authority under its Master Certificate No. 2329 by virtue of or as a result of such consolidation, since said Master Certificate represents only the operating authority owned and held by Plaintiff in the various separate certificates which are consolidated in Master Certificate No. 2329, Plaintiff's Exhibit No. 38.

"L. The operating authority of Plaintiff insofar as its service to intermediate points between San Antonio and Mathis, and the operating authority of Plaintiff insofar as its operations east of Mission and west of present U. S. Highway 77 (between Raymondville and Harlingen) and south from Harlingen to Brownsville was (prior to De-

cember 6, 1948) pursuant to a 'grandfather' certificate issued under circumstances and law similar to that pursuant to which Certificate 2339 originally issued. Plaintiff's predecessor (then acting by and through the president of Plaintiff) filed its 'grandfather' application under date of July 3, 1929. Said application (Defendant's Exhibit 10, pages 1–12) described the routes over which operations had been conducted as follows: 'Complete Route. This operation runs from San Antonio, Texas, to Brownsville, Texas, via Corpus Christi, Texas. At Corpus Christi, Texas, a local truck is run from Corpus Christi to Alice via Agua Dulce, which connects with the main operation from Corpus Christi to Brownsville, Texas, at Falfurrias. The operation from San Antonio to Corpus Christi is over Highway No. 16. From Corpus Christi to Falfurrias the operation is continued over Highway No. 16 via Kempville. The operation from Corpus Christi to Alice, which connects at Falfurrias, is run over Highway No. 12, which highway connects at Falfurrias with Highway No. 16. From Falfurrias to Brownsville all operation is conducted over Highway No. 12.'

"As other carriers over the route or portion thereof there was listed 'Universal Transportation Company, Corpus Christi to Brownsville', 'Ayalla, San Antonio-Rio Grande Valley Freight Lines, San Antonio to Brownsville,' and others (See Defendant's Exhibit 10, page 7). As schedule of operations, arrival or departure times were shown for only Kenedy, Beeville, Sinton, Corpus Christi, Brownsville, Kingsville, Falfurrias, Edinburg, Harlingen, Brownsville (Defendant's Exhibit 10, page 9). Among the towns for which rates from San Antonio were shown are: Edinburg, Edcouch, Raymondville, Lyford, Harlingen, Floresville, Falls City, Poth, Karnes City, Kenedy, Pettus, Normanna, Beeville and Skidmore (Defendant's Exhibit 10, page 10).

"Signed October 28, 1949.

"Delos Finch,

"Special Judge Presiding.

"There are no additional Conclusions of Law which I consider proper."

Appellants filed several pleas to the jurisdiction, in substance that plaintiff prior to the filing of the suit had invoked the jurisdiction of the Railroad Commission on exactly the same issues involved in the suit, that because of filing the suit before the plaintiff had exhausted his administrative remedies before the Railroad Commission, the District Court was without jurisdiction because the suit amounted to an attack on the orders of the Railroad Commission and was maintainable only in Travis County. Further it is urged that the trial court erred in construing and holding that defendant's certificates did not legally authorize service to the points in question for the points in question for the reason that same clearly contained legal authority to render such service.

The determining factors in the solution of the issues as to jurisdiction here tendered is to determine whether or not the trial court had power to determine as to the right of defendant Alamo · Express Company to serve said cities and towns under the Certificates of Convenience and Necessity issued to its assignors by the Railroad Commission. In short, did the court have power to determine the extent of the right of operation of a motor carrier holding a certificate of Convenience and Necessity issued by the Railroad Commission. A consideration of the trial petition discloses that it seeks a construction of and a compliance with by the defendants of the certificates under which they operate. Enforcement is sought in accordance with the construction placed thereon · by the plaintiff.

█ It seems well settled a carrier may enjoin operations of a competing carrier unauthorized by the Railroad Commission. Railroad Commission of Texas v. Johnson, Tex.Civ.App., 104 S.W.2d 146. Such action is not an attack on the certificate; it is not in the nature of an appeal from an order of the Board which may only be heard under the terms of the Motor Truck Statute, be maintained in the District Court of Travis County.

In our opinion the District Court of Bexar County had jurisdiction to determine

whether defendants' operations were authorized by the Certificates of Convenience and Necessity issued by the Railroad Commission. Railroad Commission of Texas v. Johnson, Tex.Civ.App., supra. We are further of the opinion that the trial court did not err in overruling defendants' plea in abatement on account of the application pending before the Railroad Commission to construe, amend and modify the certificates by virtue of which defendants claimed the right to serve the towns and cities in question. In the proceeding pending before the Commission an amendment of the certificate restricting their scope is sought. It is thought that the Commission may have the authority to enlarge or restrict such Certificates of Necessity and Convenience; if it should alter such Certificates it would be tantamount to the issuance of new Certificates. The instant case seeks a construction and enforcement of Certificates previously issued in pursuance of final orders of the Commission. The proceeding before the Commission seeks the creation or restriction of existing rights. The judicial proceeding seeks the vindication of existing rights. The subject matters are not identical.

The source of the Commission's power with reference to the regulation of common Motor Truck Carriers is Art. 911b, Vernon's Annotated Civil Statutes. This statute was passed in 1929 and has from time to time been amended.

In substance this enactment requires of a common motor truck carrier that it obtain from the Commission a Certificate of Convenience and Necessity before serving the public as such carrier, this Certificate to specify the area to be served and the routes over which such carrier was to operate.

In order to obtain such Certificate it was necessary to make application to the Commission for same. If the applicant was operating as a common carrier over a certain route prior to and at the time the Act of 1929 went into effect he might file application for such Certificate and be granted a temporary Certificate to continue such operations, just as it had been theretofore conducted. The said certificate should be-

come permanent without further action unless a protest was filed with the Commission within thirty days. This is what has been designated as the "grandfather" clause. Sections 11 and 12, Art. 911b provide for applications subsequent to the taking effect of the law, where the applicant does not come under the grandfather clause; provide for notice and hearing to all possibly interested parties.

The certificates here involved were each and all founded on a Certificate of Convenience and Necessity issued under the grandfather clause of said Motor Carrier Act of 1929. Insofar as this litigation is concerned, neither the Alamo Express Company nor the Alamo Freight Company, its assignor, nor any prior assignors, made application to the Commission for any Certificate of Convenience and Necessity other than the basic application, which was numbered 2939. No. 2939 was split into two certificates, but the area to be served and the route by which the service was to be accomplished have in no way been changed. The right of the Alamo Express to serve the towns and cities in question must be determined by a construction of this basic certificate. In arriving at a construction of the certificates in question it is thought that the applications for such Certificates, the orders authorizing same, may all be taken into consideration. Railroad Commission of Texas v. Trinity Houston Truck Line, Tex.Civ.App., 86 S.W.2d 817.

In order to effect a substantial change or amendment to a certificate there must be an application filed with the Commissioner, notice thereof and a hearing thereon. Miller v. Tarry, Tex.Civ.App., 191 S.W.2d 501 and cases cited therein, page 506; See also Sunset Express v. Gulf, C. & S. F. Ry Co., Tex.Civ.App., 154 S.W. 806. Beyond any question the original certificate issued in 1929 under the so-called grandfather clause and the certificates into which it was divided do not authorize service of the towns and cities in question. No such right was ever claimed by the holders, lessees or assignees of such certificates until some time in 1949. In order to justify the privilege of service claimed under these

certificates the privilege should appear from their face and from the application therefor, and from the order authorizing same. Such is not the case as to the certificates under which defendant Alamo Express, Inc., seeks to justify its service of the towns and the cities in question.

We adopt in toto the findings of fact and conclusions of law made by the trial judge. There is no error and the judgment is ordered affirmed.