

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

May 26, 1977

The Honorable Wilson E. Speir          Opinion No. H-1001
Director
Texas Department of Public Safety      Re:  Base municipality
5805 N. Lamar Boulevard                of a certificated common
Austin, Texas  78773                   carrier motor carrier.

Dear Colonel Speir:

You have requested our opinion regarding the extent to which a common carrier motor carrier under section 1(g) of article 911b, V.T.C.S., may lawfully serve points not authorized to be served in certificates of public convenience and necessity issued to it by the Texas Railroad Commission when such service is incident to otherwise regulated transportation performed under a through bill of lading.

As an example, you describe a situation in which a carrier possesses requisite authority to conduct operations between City A and City B.  City A is contiguous to City C; City D is contiguous to City C, but is not contiguous to City A; City B is contiguous to City E; City F is contiguous to City E, but not to City B.  Each of the cities is incorporated and none surrounds any other incorporated area.

Your specific question is:

> [C]an operations between the following points
> be lawfully performed by the common carrier:
>
>     (1)  Between City A and City E;
>     (2)  Between City C and City E;
>     (3)  Between City A and City F;
>     (4)  Between City D and City F?

The question and description are difficult to conceptualize, so we have prepared the following chart to illustrate the issues.



Article 911b, section 1(g), reads in pertinent part:

The term "motor carrier" means any person
. . . operating, or causing to be operated
any motor-propelled vehicle used in transporting
property for compensation or hire over any
public highway in this state, where in the course
of such transportation a highway between two or
more incorporated cities, towns or villages is
traversed.

Provided, that the term "motor carrier" as
used in this Act shall not include, and this
Act shall not apply to motor vehicles engaged
in the transportation of property for compen-
sation or hire between points:

. . . .

(4) Wholly within the limits of a base
incorporated municipality and any number of
incorporated cities, towns and villages which
are immediately contiguous to said base
municipality.

Provided further, that motor carriers
authorized to serve any incorporated city, town
or village within the areas described in . . .
(4) above, except carriers of commodities in

> bulk in tank trucks and all specialized motor
> carriers, may perform service for compensation
> or hire between all points within the areas
> described in . . . (4) above, on the one hand,
> and, on the other, authorized points beyond such
> areas without a certificate or permit authorizing
> service at all points within such areas when
> such transportation is incident to, or a part of,
> otherwise regulated transportation performed
> under a through bill of lading.

(Emphasis added).

Under the fact situation submitted, regulated trans-
portation service may be conducted between City A and City
B because each city is an authorized service point in the
carrier's certificate.  However, the carrier possesses no
certificated authority to conduct operations to or from
Cities C, D, E, or F.  Such authority, if any, must come
from the second proviso of section 1(g) as it refers to
sub-paragraph (4) in the first proviso.

Sub-paragraph (4), when incorporated into the second
proviso, authorizes the certificated common carrier to provide
service between all points within the limits of a base incor-
porated municipality and cities immediately contiguous to it
on the one hand, and, on the other hand, authorized points
beyond such area if the service is incident to otherwise regu-
lated transportation.

The first problem in interpreting this statute is defin-
ing the term "base incorporated municipality," since it was
not defined within the statute.  In Attorney General Opinion
M-411 (1969) at 10, this office defined the term simply as
"any municipality to which other municipalities are immediately
contiguous."  Attorney General Opinion M-411 involved a dif-
ferent fact situation to which it must be limited.  That opin-
ion relied entirely on an unreported Texas District Court case,
State v. Lomeda Corp., Civ. No. 67-4559-A, Dist. Ct. of Dallas
County, 14th Judicial Dist. of Texas, October 24, 1968, which
itself relied on the opinion accompanying an Interstate Com-
merce Commission (ICC) order, Ex Parte No. MC-37, Commercial
Zones and Terminal Areas, 46 M.C.C. 665 (1946).  The ICC opin-
ion stated that "base municipality" designated the municipality
whose commercial zone is under consideration by the ICC.

Both of these definitions show by their generality that the term "base incorporated municipality" has not been given a distinct technical definition, but has rather been used in its ordinary meaning. "Base" means "[t]he fundamental part of a thing," or "[t]he chief ingredient of anything viewed as its fundamental constituent." Webster's New Collegiate Dictionary at 72 (2nd ed. 1956). "Municipality" means city, town, or village chartered pursuant to laws of the state where located. Ex parte No. MC-37, supra at 699.

If we apply the general definition to the term as referred to in the second proviso in section 1(g), the base incorporated municipality for certificated motor carriers is the city authorized in the carrier's certificate of public convenience and necessity. It is the fundamental part of the area authorized to be served by the certificate. This definition not only follows from the ordinary meaning of the words and past usage, but also effects the legislative purpose of the Act, "to restrict and regulate rather than to expand or create exemptions." State v. Acel Delivery Service, Inc., 388 S.W.2d 930, 934 (Tex. 1965). See Dye Trucking Co. v. Miller, 397 S.W.2d 507 (Tex. Civ. App. -- Austin 1965, writ ref'd n.r.e.).

We conclude that, in the case of certificated carriers, the base incorporated municipality is a fixed point, namely, the city or cities in the carrier's certificate. We also believe that the language of the statute is clear in stating that transportation, in order to be incident to regulated transportation, must be between the "base incorporated municipality and any . . . cities . . . immediately contiguous to said base incorporated municipality," and "authorized points beyond such areas." V.T.C.S. art. 911b, § 1(g)(4).

In answering your specific questions we believe that: (1) a certificated common carrier motor carrier could provide transportation services between City A and City E because City A is authorized as a service point in the carrier's certificate and City E is immediately contiguous to City B, also named in the certificate; (2) service between City C and City E could not be performed because neither of the two cities is authorized as a service point in the carrier's certificate; (3) service could not be performed between City A and City F because City F is neither a city authorized as a service point in the certificate nor contiguous to such a city; and (4) service could not be performed between City D and City F because neither of the cities is authorized as a service point by the carrier's certificate.

## S U M M A R Y

The base incorporated municipality of a certificated common carrier, as referred to in the second proviso of article 911b, section 1(g), V.T.C.S., is the city or cities named in the carrier's certificate of public convenience and necessity. Transportation services by a certificated motor carrier, in order to be exempt from regulation as incident to otherwise regulated transportation, under the second proviso of article 911b, section 1(g), must be between points in the base incorporated municipality and cities immediately contiguous and another point authorized in the certificate of public convenience and necessity.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinions Committee

kml