The STATE of Texas, Petitioner,

v.

V. C. BILBO, Respondent.

No. A–10278.

Supreme Court of Texas.

· June 16, 1965.

Rehearing Denied July 28, 1965.

Waggoner Carr, Atty. Gen., Austin, Sam Kelley, Asst. Atty. Gen., for petitioner.

Lanham & Hatchell, Austin, for respondent.

GREENHILL, Justice.

This is a suit for a declaratory judgment to determine what commodities may be transported under the authority granted by a *Limited Common Carrier Motor Carrier's Certificate* issued to V. C. Bilbo in 1940 by the Railroad Commission of Texas. The suit was instituted by the State of Texas against Bilbo at the request of the License and Weight Division of the Texas Department of Public Safety.

Bilbo's certificate, as amended in 1961, gives him the authority "TO TRANSPORT: HEAVY BUILDING MATERIALS, MACHINERY and SUPPLIES between all points in Texas." The State alleged that Bilbo was carrying commodities not authorized by the certificate, such as cartons of paint, cartons of color cards, cartons of metal spouts, rolls of prepared roofing, rolls of prepared roofing on 2,000-lb. pallets, rolls of building paper, rolls of building paper on 2,000-lb. pallets, bundles of asphalt shingles, bundles of asphalt shingles on 2,000-lb. pallets, rolls of asphalt siding, rolls of asphalt siding on 2,000-lb. pallets, boxes of asbestos siding fixtures, bundles of asbestos shingles, bundles of asbestos shingles on 2,000-lb. pallets, 55-lb. drums of asphalt, cases of liquid asphalt in cans, packages of advertising matter, rolls of waterproof cotton cloth, rolls of waterproof cotton cloth on 2,000-lb. pallets and 20-lb. bags of fiberglass.

The trial court sitting without a jury held that Bilbo had not exceeded his authority. The Court of Civil Appeals held, for rea-sons which will be discussed herein, that Bilbo lacked authority to transport any of the items mentioned above with the exception of rolls of prepared roofing on 2,000-lb. pallets, rolls of building paper on 2,000-lb. pallets, bundles of asphalt shingles on 2,000-lb. pallets and rolls of asphalt siding on 2,000-lb. pallets. That court also held that incidental supplies or accessories to heavy building materials tendered to the carrier are integral parts of such shipments of heavy building materials. 378 S.W.2d 871 (1964). While we agree with much of the intermediate court's well-reasoned opinion, we find that we must reverse its holding that Bilbo has authority to transport the above-named commodities on 2,000-lb. pallets.

The Court of Civil Appeals aptly stated the main question here:

"The crux of the controversy seems to center around a device that the manufacturers of building materials have used for the past few years; that is, a 'palletizing' or 'unitizing' of certain items which individually could be loaded manually but when aggregated or grouped on pallets or boards and strapped together by steel bands become so heavy that mechanical devices such as forklift trucks are necessary for loading and unloading the heavy pallets." 378 S.W.2d at 874.

First, we hold that the intention of the Railroad Commission as expressed in Bilbo's certificate is a question of law. In arriving at a construction of the certificate we may take into consideration Bilbo's application and the order of the Railroad Commission. *Alamo Express, Inc. v. Brown Express*, 234 S.W.2d 62, 83 (Tex. Civ.App.1950, writ ref., n. r. e.); *Railroad Comm. of Texas v. Trinity Houston Truck Line*, 86 S.W.2d 817, 818 (Tex.Civ.App. 1935, no writ); see Jesse Coonrod Johnson, 61 M.C.C. 783, 785–787 (1953). By examining the more specific language of the application and the order, we are afforded a better understanding of the general terms

used in the certificate and gain some insight into the general scheme of regulation envisioned by the Commission. See Jesse Coonrod Johnson, supra.

The following language is found in the application:

"Applicant proposes to haul for construction contractors only, both in the construction of highways and in large building construction. Applicant proposes to haul only heavy building materials such as may not ordinarily be transported by common carrier truck lines because special equipment is required. * * *

"* * *

"This operation will cover routes and territory already served by other common carrier lines, either by rail, road, or both. As indicated hereinabove, however, the applicant proposes here to haul only heavy materials and supplies for building and construction contractors such as may not ordinarily be handled by the regular general commodity common carrier because of the inadequacy and insufficiency of the regular common carrier equipment, and materials and supplies proposed to be hauled by the applicant being such materials and supplies as would ordinarily require special equipment, but at the same time they would be supplies not authorized to be carried by special commodity carriers.

"There is no adequate service for this type of commodity movement within the state of Texas, because applicant proposes to serve highway contractors as well as building contractors and in highway construction there is much heavy material and many supplies which can not be hauled by common carrier truck lines * * *.

"* * *

"The use of any one highway would be negligible, because your applicant would only serve the various contractors of the state to points of construction."

The pertinent parts of the order of the Railroad Commission are as follows:

"THE COMMISSION FINDS from the evidence that the applicant proposes to render a limited common carrier service only, limiting his transportation to the movement of heavy machinery and building materials for construction contractors, such machinery and materials being of such type and nature which may not ordinarily be transported by common carrier truck lines and which by their size and character ordinarily require special equipment. Few, if any, of the motor carriers are authorized or equipped to render this type of service and there being no protestants of motor carriers at the hearing, it would indicate that they are not interested nor do they care to render such service.

"THE COMMISSION FURTHER FINDS THAT building contractors on large construction work, including highways and large building construction, use very heavy machinery and building materials, much of which can not be dismantled; that in practically every case where machinery and materials move to the place of construction that some portion of the movement of the said machinery must be accomplished by the use of motor vehicle; that with existing transportation facilities such heavy machinery as contemplated to be used in construction work is moved to the place of construction by what is termed as 'walking it' or moving it under its own power, which is slow and inexpeditious. This involves movement over highways whereby such machinery is moved on rolling chains with cleats which are very damaging to the highways.

"* * *

"THE COMMISSION FURTHER FINDS that a large percentage of such movement would require special permit to be issued by the State Highway Department under other laws. * * *

"THE COMMISSION FURTHER FINDS that the inauguration of the service as proposed by the applicant would not seriously affect or interfere with the present common carrier transportation service now being rendered in said territory. * * *"

We agree with the following conclusions of the Court of Civil Appeals with respect to the intention of the Railroad Commission:

"It is a matter of common knowledge that the motor transportation industry as a whole is highly competitive in nature. This fact was recognized by the Legislature of Texas when it enacted the Motor Carrier Act in 1929. The rights to use certain routes and the right to carry certain commodities to various points in this State, as well as in interstate commerce, along these routes are highly regulated and policed by the various agencies responsible therefor in deference to the public weal.

"When Bilbo was granted the certificate in question in 1940, the above mentioned regulation of common carriers by the Railroad Commission was well defined and the commodities that these common carriers were authorized to carry were well defined. To allow the construction given Bilbo's certificate by the Trial Court with respect to the palletized items would, in effect, with the exception hereinafter pointed out, invade the field of commodities generally conceded to the common carriers. Such an interpretation not only puts the above mentioned language of the application and order to strain but ignores the traditional commodities that

the various classes of carriers are authorized to transport. The greater number of items that the State sought to restrain Bilbo from transporting were commodities transported by common carriers when he first sought the certificate as well as commodities that are presently transported by common carriers under lawful authority. The placing of commodities on pallets and strapping them together as a unit for shipping is relatively a new development in the transportation industry. Such method was not in general use when Bilbo's certificate was first issued in 1940. Such method of packing and shipping is widely used today. If the extent of Bilbo's authority is to be determined by the weight of the building commodity aggrandized on pallets that require a special device for loading and not by looking to the commodity itself, an interpretation would be given to the authority that was not intended by the Commission when the authority was issued and was certainly not so interpreted by the common carriers, there having been no protest to the original application." 378 S.W. 2d at 876.

Bilbo states in his brief that this is a case of first impression in Texas. We are fortunate, however, in having the benefit of a series of Interstate Commerce Commission cases which are directly in point. W. J. Dillner Transfer Co., 79 M.C.C. 335 (1959), aff'd, W. J. Dillner Transfer Co. v. I. C. C., 193 F.Supp. 823 (W.D.Pa.1961), aff'd mem., W. J. Dillner Transfer Co. v. United States, 368 U.S. 6, 82 S.Ct. 16, 7 L.Ed.2d 16 (1961); Jesse Coonrod Johnson, supra; St. Johnsbury Trucking Co., Inc., 53 M.C.C. 277 (1951). These cases establish the general rule that in determining the authority of a carrier, the individual commodity itself is the controlling consideration, not the weight of the aggregated commodities on pallets. Under this rule, Bilbo is not authorized to haul any

of the commodities here in question because they are neither heavy nor require the use of special equipment.

In holding that Bilbo had the authority to transport the aforementioned palletized commodities, the Court of Civil Appeals followed an exception to the general rule. See C & H Transp. Co., Inc., 14 Fed.Carr. Cas. ¶ 35,301 (I.C.C.1961); R. Q. Black, 64 M.C.C. 443 (1955). In the Black case the Commission said:

"With respect to the bundles of sheet metal here involved, we think bundling was *required* by the inherent nature of the commodity. Single sheets are *unstable,* subject to bending or other damage, and, having in mind their size, *awkward or impossible to handle* without bundling. In the case of sheet tinplate, at least, bundling would *also* seem to be required as protection against damage to the coated surface of the sheets, and the same is true, to a lesser extent, with respect to the rather soft aluminum sheets. Examination of the facts concerning this method of handling convinces us that the bundling is done, not merely for economy and efficiency, but because it is *required* by the inherent nature of the commodity." 64 M.C.C. at 446. [Emphasis supplied.]

As to some other commodities the Commission held:

" * * * the commodities themselves are not such as in the absence of aggregation would require the use of special equipment either in loading and unloading or in actual transportation. Clearly, aggregation or palletization, though a convenience and from a practical standpoint desirable prior to transportation, was not *dictated or required* by the inherent nature of the commodity itself nor so *essential or imperative* as to make the aggregation or the palletized lot 'the commodity itself' rather than in fact an aggrega-

tion." 64 M.C.C. at 447. [Emphasis supplied.]

The Commission in the Dillner case, decided approximately four years after Black, refused to apply the "inherent nature" exception and, in summarizing the important principles of construction, said:

"In bundling, aggregating, or palletizing, it should be the general rule of construction (1) that the individual 'commodity itself' is the controlling consideration as respects a carrier's authority; (2) that the limited exception which the Black case * * * represents, where commodities are bundled for protection or as otherwise required by their 'inherent nature,' must be maintained within its strictest limits; (3) that the *minimum bundle* which is required by the 'inherent nature' of the commodity is the size or type of bundle which must be considered in any determination whether necessity exists for the use of special equipment; and (4) that in order reasonably to maintain these limits it shall be presumed, in the absence of a sound basis for concluding to the contrary, that commodities tendered to carrier, in bundles or aggregations, are within the general rule and not within the limited exception thereto. * * *" 79 M.C.C. at 358. [Emphasis supplied.]

The State contends that there is no evidence to support the Court of Civil Appeals' conclusion that certain commodities require palletization for protection because of their inherent nature. Three witnesses, all representatives of shippers, testified concerning the practice of palletizing commodities. The first witness said that commodities are tendered to the carrier on pallets because it saves time in loading and because "we have less damage than when we ship loose." The second witness said "there is a trade demand for that type of a unit" and "also that it has a tendency of getting our products to their destination in a better condition." He said that his company would

never consider returning to the old method because of economic reasons. Finally, the last witness testified that he had "found from past experience that this method of handling eliminates quite a bit of our damage, and it is also economical."

There is no testimony concerning the physical characteristics of the commodities involved. There is no evidence that they *require* palletization for their protection. No attempt was made to define the minimum bundle required. We hold that the requirements of the inherent nature test have not been met in this case and that there is no evidence to support that portion of the judgment of the Court of Civil Appeals.

We approve the holding below that a forklift qualifies as special equipment so long as the commodity itself is otherwise authorized. We also approve the holding that incidental supplies and accessories may be hauled when tendered to the carrier as an integral part of a shipment of heavy building materials, machinery or supplies. T. M. Zimmerman Co., 14 Fed.Carr.Cas. ¶ 34,856 (I.C.C.1960); R. Q. Black, supra.

The State also asks this Court to declare that Bilbo's authority is limited to transportation of commodities for building and construction contractors only and to points of construction only. No mention of these complaints was made in the State's original petition. They were not included in the statement of points in the brief before the Court of Civil Appeals as required by Rule 374, Texas Rules of Civil Procedure. These points, therefore, are not before this Court.

The judgments of the trial court and the Court of Civil Appeals are modified as herein indicated, and as modified are affirmed.

GRIFFIN, J., dissenting.