**DYE TRUCKING COMPANY, Appellant,**

v.

**Walter A. MILLER et al., Appellees.**

**No. 11341.**

Court of Civil Appeals of Texas.

Austin.

Dec. 8, 1965.

Rehearing Denied Jan. 5, 1966.

**508**

Dan Felts, Dean Moorhead, Austin, for appellant.

White, McElroy & White, Dallas, Small, Small & Craig, C. C. Small, Jr., James, Robinson & Starnes, Phillip Robinson, Austin, Kelley, Looney, McLean & Littleton, Edinburg, Clark, Thomas, Harris, Denius & Winters, Jerry C. Prestridge, Austin, for appellees.

PHILLIPS, Justice.

This case presents the question of whether the term "batch cement," as used in a Specialized Motor Carrier Certificate held by Appellant Dye Trucking Company, permits the appellant to transport the commodity "bulk cement."

In the trial court appellant claimed that under the term "batch cement," as used in its certificate, it is fully entitled to transport bulk, dry cement, unmixed with water, sand or any other substance, the dry cement not being contained in sacks, packages or other containers, for hire over the highways of the State of Texas not to exceed 350 miles in distance.

Appellees contended that the term "batch cement," as used in appellant's certificate, does not include bulk, dry cement and that appellant is not entitled to transport this commodity under color of such certificate.

The trial court rendered judgment for appellees and we affirm his judgment.

Appellant is before this Court with eight points of error assigned to the judgment of the trial court. Points One and Three complain of the trial court's judgment in holding that appellant is not authorized to transport bulk cement. Point Two complains of the trial court's judgment in failing to hold that appellant had this authority. Point Four says that there is "no evidence" to sustain the holding. Point Five states that there is "insufficient authority" to support the trial court's judgment and Point Six states that the holding is "contrary to the great weight and preponderance of the evidence." Points Seven and Eight are alternative in nature and state that the trial court should have at least held that appellant had the authority to transport bulk cement to "batching plants."

We overrule these points.

It is generally agreed between the parties hereto that this case hinges upon what the Railroad Commission meant by "batch cement" when it issued the appellant the certificate in question.

The original application, filed in 1950 under the above-described statute, out of which the authority claimed by the appellant originates, stated the commodities for which authority was requested as follows:

"Applicant proposes to transport gravel, rock, caliche, shell, iron ore, ready mix asphalt, *dry cement,* sand, stone, round and crushed, loose in bulk * * *" (Emphasis added.)

The application stated that these commodities were to be transported in the following manner:

"* * * in truck load lots in dump trucks or trailer loads in dump trailers * * *"

The proposed transportation was to take place:

"* * * from gravel pits and other storage places to construction sites, including buildings, dams, streets, and highways and all other kinds of structures where in the course of such transportation the longest haul will not exceed 150 miles."

The application, in describing the "specialized equipment" to be used, said:

"The dump truck has become a vital and essential piece of equipment or machinery in the construction of not only highways, roads, streets, dams and buildings and all other types of structures because outside of the steel and lumber, the commodities handled loose in bulk in dump trucks constitute a large part of the materials going into such construction. The dump truck or trailer is so constructed that its bed will contain several yards of any of the commodities described herein and can be conveniently loaded by a mechanically operated shovel. The bed of the dump trailer is specially constructed so as to withstand the heavy load and is so attached to the truck by mechanical devices that by a single movement of the hand the driver can overturn the bed so as to unload the commodity at the exact spot where it will be used in construction."

The application contains the following statement:

"There are only a few specialized motor carriers who are authorized to transport the commodities described and render the service in dump trucks and dump trailers as proposed in this application."

This is followed by a list of such carriers.

The application then says:

"The above styled carriers with the exception of Sparks Trucking Com-

pany of Victoria have only recently procured their certificates and like these applicants were operating long prior to the filing of these applications."

Pursuant to this application the Commission granted Specialized Motor Carrier Certificate No. 8590, setting out the authority granted in the following language:

"Gravel, rock, caliche, shell, iron ore, ready mix asphalt, *batch cement*, sand, stone, round or crushed, loose in bulk * * *" (Emphasis added.)

These commodities, according to the Certificate, were to be transported in the following manner:

"* * * in truck load lots in *open* dump trucks or trailer loads in dump trailers * * *" (Emphasis added.)

These commodities were to be transported in such manner from and to the following places:

"From gravel pits and other storage places to construction sites, including buildings, dams, streets and highways and all other kinds of structures where in the course of such transportation the longest haul will not exceed *100* miles." (Emphasis added.)

The Certificate issued by the Commission differs from the application in the following respects:

The word "batch" has been inserted in lieu of the word "dry" before the word "cement" in the commodity description. The word "open" has been inserted before the word "dump" in the equipment description. The mileage has been reduced from 150 to 100 miles.

In 1960 an application was filed to amend Specialized Motor Carrier Certificate No. 8590 in the following manner:

"So as to remove the present restriction of miles the commodities sand, gravel, etc., now authorized may be transported and allow such commodities to be transported between all points

in Texas without restriction as to distance between origin and destination without change in commodities now authorized."

This application disclaimed any intent to make any change in the commodity authority set out in the original Certificate in this language:

"Let it be emphasized that no authority is sought hereby to eliminate, add or change the commodities that may be transported."

Apparently similar applications were made by other carriers of the general type because a joint order covering several applications were issued by the Commission on May 7, 1961. The Commission order pursuant to these applications reads as follows:

"The commodities SAND, GRAVEL AND OTHER ROAD BUILDING MATERIALS may be transported a distance of three hundred fifty (350) miles from point of origin to point of destination."

In 1963 an application was made to divide the authority contained in Specialized Motor Carrier Certificate 8590. The application stated that a portion of the authority was to be sold and the balance of the authority was to be carved out and set up under a different certificate. The Commission granted the request to divide and issued a new Certificate No. 21,213, in which the carved out authority (which is at issue in this case) is described as follows:

"The transportation of BATCH CEMENT, in bulk, in truck load lots, *in open trucks or trailer loads in dump trailers*, over irregular routes and upon irregular schedules, between all points and places in Texas, in the movement of said commodities from storage places to construction sites, including buildings, dams, streets, and highways, and all other kinds of structures where in the course of such transportation the

longest haul will not exceed 350 miles." (Emphasis added.)

This remnant of the original authority is now held by appellant, Dye Trucking Company.

Many witnesses testified for both appellant and appellees and from this testimony there is little or no controversy over the fact that the term "batch cement" is a term that is not used in the cement industry and for all practical purposes is meaningless in itself. There is also general agreement that the word "batch" standing by itself and used as a noun has a well known meaning in the cement industry and refers to a dry mass or mixture of cement, sand and aggregate. The word cement has the same meaning generally ascribed to it by the general public and can be described as a grey, powdery substance that when mixed with stand, gravel and water forms concrete.

The Motor Carrier Act provides that the Commission shall have no jurisdiction to consider any specialized motor carrier application unless the application sets forth in detail:

"The commodity or commodities or class or classes of commodities which the applicant proposes to transport and the specific territory or points to, or from, or between which the applicant desires to operate, together with the description of each vehicle which the applicant intends to use." (Section 5a(c)2, Art. 911b, V.A.C.S.)

The Act also states:

"The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service." (Section 5a(d), Art. 911b, V.A.C.S.)

It is also the law in Texas that the intention of the Railroad Commission, as expressed in the certificate, is a question of law and, further, that the application of the Commission for authority and the order issued by the Commission are to be taken into consideration in arriving at such intention. See State v. Bilbo, 392 S.W.2d 121, Tex.Sup.Ct.

Grants of property rights or privileges by legislative act such as the right to transport certain commodities for hire must be construed strictly and whatever is not unequivocally granted in clear and explicit terms must be considered withheld. Magnolia Petroleum Company v. Walker, 125 Tex. 430, 83 S.W.2d 929.

Appellant claims the right to transport bulk cement for hire in this State. In order to have such a right, appellant must have a valid certificate from the Railroad Commission granting such right in accordance with Art. 911b, V.A.C.S. The burden is upon the appellant to demonstrate that the certificate it holds grants such authority unequivocally in clear and explicit terms. Unless the Commission granted the authority to transport bulk cement in the original certificate issued under Specialized Motor Carrier Certificate No. 8590, such authority does not exist.

Appellant argues that one of the accepted general definitions of the word batch is a verb meaning to weigh. That batch cement means a weighed or measured amount of dry cement. Another meaning of batch cement could mean a lot of cement or a quantity of cement.

Appellant further suggests that batch cement, in bulk, means dry cement in bulk as distinguished from dry cement in sacks.

Appellant also contends that in applicant's original application for the authority in question, authority to haul dry cement was requested, that the Certificate of the Commission gave them authority to haul batch cement; that the Commission mistakenly substituted "batch" for "dry;" that from this an inference can be drawn that the two terms are synonymous.

Appellant further contends that the term in controversy should at least allow appellants to haul dry cement to a location where it would become part of a batch or to a site of a "batching plant."

Nor are we impressed with the fact that appellant had, at times in the past, hauled dry cement in certain instances in Dallas or the fact that later certificates to carriers of a class such as appellant are more specific in the grants of authority wherein they use the word "batch" or "bulk cement" mixed with sand and gravel.

It would be poor law, indeed, to start with an admittedly unclear term in a certificate and to project therefrom what the Commission might have meant thereby through surmise and pure guess. The statute requires full and complete findings to support a grant of authority to a specialized motor carrier and any authority that has to be construed by the methods suggested by appellant was either not affirmatively presented to the Commission or was not granted.

We must conclude that the Commission intended to grant appellant authority to haul some commodity other than "cement." If evidence of the need of appellant's services as a cement hauler was presented to the Commission, no finding in respect thereto was made in the order granting the certificate in question. In order to be a valid grant of such authority, such a finding is necessary.

The original application makes it clear that the applicant was among a group of dump truck operators seeking Railroad Commission authority for the first time in 1950. The original application was for authority to haul the class of commodities then customarily hauled in dump trucks and trailers. A dump truck operator could not have hauled "batch" without some cement

authority. He would, in the absence of some cement authority, have been limited to sand and aggregates. Therefore, the Commission, in order to grant him a workable authority to haul this well known dump truck commodity, used "batch" to describe the circumstances under which he could haul the commodity "cement." The use of the word batch was deliberate and purposeful on the part of the Commission. If unlimited cement authority had been intended, the Commission would not have seen fit to drop the descriptive word "dry" as used in the application and substitute the word "batch."

We affirm the judgment of the trial court.

Affirmed.

ARCHER, C. J., not participating.