**RAILROAD COMMISSION OF TEXAS, Appellant,**

v.

**HOME TRANSPORTATION COMPANY, et al., Appellees.**

No. 13788.

Court of Appeals of Texas, Austin.

March 14, 1984.

Rehearing Denied April 25, 1984.

---

1. This and all other references to rules are to Texas Rules of Civil Procedure.

Mark White, Atty. Gen., Douglas Fraser, Asst. Atty. Gen., Austin, for appellant.

James M. Doherty, Doherty & Munson, Austin, for appellees.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE, JJ.

PHILLIPS, Chief Justice.

The Railroad Commission of Texas appeals from the judgment of the trial court which judicially reviewed, and remanded with instructions, a Commission order. The Commission order denied Home Transportation Company's application to amend, and thereby participate in, a tariff. In a prior opinion this Court dismissed the appeal for want of jurisdiction. 643 S.W.2d 512. The Supreme Court reversed our judgment and remanded the case to this Court for consideration on the merits. 654 S.W.2d 432. We reform the trial court's judgment and, as reformed, affirm it.

Home Transportation holds a specialized motor carrier's permanent certificate of convenience and necessity. Home is therein authorized to transport, *inter alia,* "prefabricated houses ... when said commodities are not moving as oilfield equipment [under certain restrictions]."

Home filed with the Commission an application to amend, and thereby become a participating carrier under, Railroad Commission of Texas Motor Freight Commodity Tariff No. 40–B. Tariff 40–B contains a rate schedule which applies to the transportation of, *inter alia,* "buildings and sections of buildings mounted on undercarriages ...."

The Commission denied Home's application based upon the following legal conclusions: (1) that Home's certificate is a "Wales record certificate pursuant to prior Commission order granting such categories of certificates," (2) that Wales record certificates "apply only to the transportation of named heavy industrial commodities and commodities used in the oil and gas, sulfur, and water drilling industries," and (3) that "holders of Wales ... certificates are entitled to transport commodities only under Commission tariffs pertaining to the transportation of oilfield equipment," and (4)

322

"[t]he rates in Tariff 40–B bear no relationship to oil and gas industry [sic] and are not therefore applicable to movements under applicant's certificate."

On review the trial court made, *inter alia,* the following findings: (1) that the Commission is without authority to interpret or construe the effect of its final orders and certificates; (2) that the Commission, in deciding applications to participate in a tariff, must liberally allow tariff participation where the applicant makes a showing of a "colorable claim of authority" to transport commodities contained in the tariff, when such authority appears on the face of a certificate; (3) that by virtue of its Wales record certificate, Home has a colorable claim of authority to transport commodities covered by Tariff 40–B; (4) that authority conferred by Wales record certificates is not limited to transportation of commodities used in the oil and gas industry or subject to any other "intended use" limitation; (5) that Wales record certificate holders are not, as a matter of law, limited to participation in Commission tariffs pertaining to the transportation of oilfield and/or heavy industrial equipment; and (6) that the Commission has not afforded Home a full and fair consideration of its application on the merits.

The trial court ordered the Commission to reopen the tariff application proceeding so as to allow Home an opportunity to supplement and update its evidentiary submission and to thereafter reconsider Home's application in a manner consistent with the court's findings.

By six points of error the Commission challenges the trial court's mandate. We note that appellee C & H Transportation Co., Inc. had a relevant role in the above-mentioned events which we shall not address until we reach the points of error which are relevant thereto.

## I.

■ In its sixth point of error the Commission contends that the district court erred in ruling that the Commission is without authority to interpret or construe the effect of its final orders and certificates. We agree.

The legislature has given the Commission the duty, authority, and power "to supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway in this State [and] to fix, prescribe or approve the maximum or minimum or maximum and minimum rates, fares and charges of each motor carrier . . . ." Tex.Rev.Civ.Stat.Ann. art. 911b (Supp.1982). In carrying out this legislative mandate the agency has adopted certain internal procedures.

■ Authority to commercially carry commodities is manifested by a certificate of convenience and necessity: such a certificate names the commodity and sets out restrictions on carriage. A carrier has no right to make commercial use of the highway other than those rights expressly granted in the certificate. *Railroad Commission of Texas v. Trinity Houston Truck Line,* 86 S.W.2d 817 (Tex.Civ.App. 1935, no writ).

To obtain a certificate a carrier must file an application with the Commission. After a hearing, the Commission enters an order granting or denying the application.

In carrying out its ratemaking function, the Commission has adopted a tariff system. A tariff is a commission order which authorizes certain named carriers to charge designated rates for the carriage of specific commodities under detailed conditions. To participate in a tariff a carrier files an application with the Commission. After notice and hearing, the Commission either approves or rejects the application.[1]

■ Under the system devised by the Commission, authority to haul the commodities named in a tariff, as evidenced by a certificate, is a condition precedent to tariff participation. Home here contends that

---

1. This was the procedure here followed. It is not clear whether prior Commission approval is a prerequisite to participate in all Commission tariffs, or whether approval is sometimes sought merely to avoid a subsequent claim of illegal conduct.

the Commission lacks the power to determine whether a carrier has satisfied this precondition to tariff participation. We hold that such power is a necessary corollary of the ratemaking power. Consequently, the Commission may, *for administrative purposes*, interpret its own certificate. *See Public Utility Comm. of Texas v. Houston Lighting & Power Company*, 645 S.W.2d 645 (Tex.App.1983, writ ref'd n.r.e.). Such interpretation is subject to judicial review.

The belief that the agency here lacks authority to interpret Home's certificate apparently has roots in a misinterpretation of several judicial decisions, in which the language used was perhaps in some respects overly broad. These decisions can be distinguished from the present case on their facts: none involved a situation where the agency had purported to interpret a certificate.

In *Smith v. Wald Transfer & Storage Co., Inc.*, 97 S.W.2d 991 (Tex.Civ.App.1936, writ dism'd) the Railroad Commission had granted Wald a common carrier certificate after due notice and public hearing. Protestants attacked the order granting a certificate by motion for rehearing. The Commission granted the motion for rehearing and set aside the order granting a certificate. It would appear that at the time these events occurred, there was no statutory provision authorizing the Commission to proceed upon a motion for rehearing. Sole authority for motion for rehearing was grounded upon a Commission rule.

Wald appealed the Commission order setting aside the prior certificate grant; the trial court enjoined the Commission from interfering with Wald in operating under the certificate. In upholding the trial court's ruling, the *Smith* court held that the Commission lacked authority to *set aside* the order granting a certificate to Wald. Three reasons were advanced: (1) Wald had not been given proper notice of the hearing on protestant's motion to set aside; (2) protestants did not have a justiciable interest in the controversy, and (3)

"[t]he statutes do not attempt to give the commission any character of power of review of its previous orders." 97 S.W.2d at 995. It is apparently this quoted language that is relied upon to support the proposition that the Commission lacks authority to interpret its own certificates.

The distinction between the facts in *Smith* and the facts before us is readily apparent: The *Smith* court was faced with a situation where the Commission had purported to *set aside* an order; it did not hold that the Commission cannot *interpret* an order. This distinction is reinforced by the discussion which follows the quoted language.

The court indicated that the Commission had the statutorily-implied power to retroactively set aside its own order upon a showing that such order is void; it indicated that by the same authority the Commission could prospectively set aside its order upon a showing that a change had occurred in highway conditions. It concluded, however, that the Commission lacked statutory authority to retroactively reverse a prior final decision upon the same fact situation. This conclusion was reinforced by the court's observation that the potential jurisdiction of the courts attached as soon as the Commission order became final and by its holding that the courts' jurisdiction could not be concurrent with the Commission's. Therefore, the *Smith* court did not hold that an agency cannot make a determination as to what authority had previously been given to a carrier; it held only that, under the facts presented, an agency could not *alter* the authority previously granted.

*Alamo Express v. Brown Express*, 234 S.W.2d 62 (Tex.Civ.App.1950, writ ref'd n.r.e.) did not involve an appeal from a Commission order. Alamo Express and Brown Express were both common carriers; Brown contended that Alamo was operating in excess of its authority, as granted by the Commission. Brown initially filed with the Commission motions requesting that the Commission construe Alamo's authority under certificates held by Alamo.

Thereafter, prior to any Commission action, Brown sought and obtained an injunction from the district court: Alamo was enjoined from operating along certain routes.

The trial court held in its conclusions of law, which were adopted by the court of civil appeals, that the trial court's jurisdiction was unaffected by the action pending before the Commission. In explaining why it was not deprived of jurisdiction by the action pending before the Commission, the trial court stated as follows:

> The *Railroad Commission does not sit as a court to construe the effect of its final orders or of certificates issued by the Commission* and any interpretation by said Commission of the meaning, force and effect of such final orders and certificates would not be binding upon the courts and would constitute only an opinion as to the rights of the parties. The Railroad Commission does not exercise or have the power of enforcement of its opinions or interpretations of its final orders and certificates as possessed and exercised by the courts of Texas, and to which the Plaintiff is entitled.

234 S.W.2d at 74 (emphasis added).

It is apparently the emphasized portion of the above language which is relied upon to support the proposition that the Commission lacks authority to construe its certificates. From the context of the language, it is clear that the *Alamo* court did not hold that the Commission could not construe the effect of its certificates; it merely held that a motion to construe a certificate, pending before the Commission, would not deprive the district court of jurisdiction to construe the certificate, because the Commission's construction would not be binding on the courts.

*State v. Refrigerated Transport, Inc.,* 348 S.W.2d 241 (Tex.Civ.App.1961, writ ref'd n.r.e.) did not involve an appeal from a Commission order. The State of Texas had obtained from the district court an order construing Refrigerated Transport's motor carrier certificate. In holding that the trial court had jurisdiction to grant declaratory relief (construe the certificate to determine what commodities Refrigerated had authority to haul), this Court stated that such was "a matter for determination by the Courts, and not for the Railroad Commission." 348 S.W.2d at 243. This is evidently the language relied upon to support the proposition that the Commission is without power to construe its own certificates.

However, this Court, immediately after the above-quoted language, emphasized that the case did not involve an appeal from an order of the Railroad Commission, and cited *Alamo Express, Inc. v. Union City Transfer,* 158 Tex. 234, 309 S.W.2d 815 (1958). In the *Union City* case, the Supreme Court held that in a direct attack upon a Commission order, an action for declaratory judgment, declaring the meaning of such Commission order, does not lie. Therefore, the provision quoted from *Refrigerated Transport* does not mean that the Commission cannot interpret its own certificates, but was rather part of an attempt to explain why the *Refrigerated Transport* court had jurisdiction to render a declaratory judgment (because the case did not involve a direct appeal of an agency order).

*State v. Bilbo,* 392 S.W.2d 121 (Tex.1965) is similar to *Refrigerated Transport* in that it was an action (brought by the State) seeking a declaratory judgment to determine what commodities may be transported under authority of a certificate; it did not involve an appeal from an agency order. We are puzzled as to how this case and *Dye Trucking Company v. Miller,* 397 S.W.2d 507 (Tex.Civ.App.1965, writ ref'd n.r.e.) could be cited for the proposition that the Commission cannot interpret its certificates. While both cases hold that the intention of the Commission, as expressed in a certificate, is a question of law, this should not be viewed as a prohibition on Commission interpretation of a certificate for administrative purposes.

It is clear that none of the cases cited would preclude the Commission from interpreting a previously-issued certificate in an effort to ascertain whether a carrier was

thereunder authorized to participate in a tariff. We sustain the Commission's sixth point of error.

## II.

█ Implicit in our holding that the Commission may, for administrative purposes, interpret its certificates is the principle that the Commission may not use the occasion to interpret as a means to amend the certificate. While the administrative motion for rehearing has been statutorily sanctioned, Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 16(e) (Supp.1982), any attempt to alter a certificate after the time for rehearing expires would still have to be predicated upon a showing of changed conditions, *Smith v. Wald Transfer & Storage Co., Inc., supra;* see Tex.Rev.Civ.Stat.Ann. art. 911b, § 12(b) (1964), and then only upon application followed by notice and hearing, *Alamo Express v. Brown Express, supra.*

█ The Commission's interpretation of a certificate may be judicially reviewed in an appeal from a grant or denial of an application to participate in a tariff. For this reason, the Commission should interpret the certificate as would a court; in this manner all parties have an opportunity to develop an administrative record upon which the courts can determine whether the Commission correctly construed the certificate. In an appeal from a grant or denial of an application to participate in a tariff, the court's scope of inquiry is confined to the agency record. Tex.Rev.Civ. Stat.Ann. art. 6252–13a, § 19(d) (Supp. 1982). Such is not a ratemaking proceeding.

█ Since an action for declaratory judgment (to determine what commodities may be transported under authority of a certificate) does not involve an appeal from an agency order, the evidence in such a hearing is developed before the court. *See State v. Bilbo, supra.* However, the evidence relevant to certificate interpretation will be identical in both appeals and declaratory judgment actions.

█ The same rules apply to the construction of orders of an administrative agency as apply to the interpretation of statutes; the ultimate object of construction is to ascertain the intent of the administrative body. *Airport Coach Service, Inc. v. City of Fort Worth,* 518 S.W.2d 566 (Tex.Civ.App.1975, writ ref'd n.r.e.). Such intent is a question of law. *State v. Bilbo, supra.*

█ A Commission certificate is merely a physical representation of authority granted through an agency order. In arriving at a construction of the certificate we may consider the order which gave rise to the certificate, as well as the application which gave rise to the order. *State v. Bilbo, supra.* An examination of the specific language of the application and order may yield "a better understanding of the general terms used in the certificate [and an] insight into the general scheme of regulation envisioned by the Commission." *Id.*

█ The Commission's fourth and fifth points of error provide as follows: (4) the district court erred in holding the Commission's order was a violation of and in excess of the Commission's statutory authority, was arbitrary and capricious and was erroneous as a matter of law, and (5) the district court erred in holding that Home was not afforded a full and fair consideration of its application on the merits. For reasons stated above, we sustain that portion of the fourth point of error which contends that the trial court erred in holding the Commission lacked statutory authority to enter the order. We overrule the remainder of these two points of error.

It is clear from a reading of the administrative proposal for decision, made a part of the Commission's final order, that the Commission was confused as to what authority it did have in interpreting the carrier certificate. The proposal for decision initially states that "[t]he Commission does not have the power to interpret carrier certificates in deciding applications to participate in a tariff," and immediately thereafter cites *State v. Bilbo, supra, Dye*

*Trucking Company v. Miller, supra,* and *Alamo Express v. Brown Express, supra.* Following this statement the proposal goes on to examine some of the orders which gave rise to the certificate, and, in essence, interprets the certificate.

We have examined the agency record and from such are unable to make an informed decision as to whether Home is, under its certificate, entitled to transport commodities *only* under Commission tariffs pertaining to the transportation of oilfield equipment. While some orders arguably relevant to interpretation of Home's certificate appear in the record, these often refer to other orders which we do not find in the record. We find no certificate applications in the record. Considering the complex nature of the certificate, we would do a disservice to all parties if we attempted to interpret the certificate based upon the agency record before us.

Additionally, all that has been said about certificate interpretation is equally relevant to tariff interpretation. The ultimate question is whether Home has authority under its certificate to haul commodities listed in the tariff. We find little evidence in the record relevant to interpretation of the tariff.

We hold that the inadequacy of the record must be attributed to the Commission's equivocation regarding its authority. If the Commission had, at the hearing on the motion to participate in the tariff, informed Home that it intended to interpret the certificate, then Home would have had an opportunity to introduce evidence relevant thereto. The Commission's practice of denying authority to interpret, and then interpreting the certificate, was arbitrary and capricious. We concur with the trial court's ruling that Home was not afforded a full and fair consideration of its application on the merits.

### III.

■ The trial court permitted appellee C & H Transportation Co., Inc. and Gypsum Transport, Inc., both of whom allegedly hold a Wales record certificate, to inter-

vene in the appeal of the Commission order. Gypsum and C & H contended that they had a substantial interest in the proceeding, due to the effect that the Commission's interpretation of Home's certificate could have on their certificates. The trial court additionally permitted the intervention of Oil Field Haulers Association, Inc. (OFHA), which contended that its carrier members were affected by the Commission's order. OFHA requested that the trial court set aside the Commission order and remand the cause to the Commission for reconsideration; OFHA requested *in the alternative* that the court "enter a declaratory judgment declaring that the Orders of the Commission complained of are invalid, void and of no force and effect. . . ."

In its third point of error the Commission complains that the trial court erred in failing to grant the Commission's motion to sever OFHA's cause of action for declaratory judgment. In a direct attack upon a Commission *order*, an action for declaratory judgment does not lie; Tex.Rev.Civ.Stat. Ann. art. 911b provides for the method of attack on a Commission order (appeal). *Alamo Express v. Union City Transfer, supra; cf. City of San Antonio v. United Pipe Line Company,* 354 S.W.2d 217 (Tex. Civ.App.1962, no writ).

■ OFHA contended before the trial court that, in interpreting Home's certificate, the Commission had adopted a *rule.* OFHA apparently sought a declaratory judgment under authority of Tex.Rev.Civ. Stat.Ann. art. 6252–13a, § 12 (Supp.1982), which gives the district courts of Travis County authority to determine the validity of agency rules by declaratory judgment.

We need not decide whether the trial court could have here entered a declaratory judgment since there is no indication that it did so. It granted the primary relief requested by OFHA (setting aside the order and remanding the cause); it apparently did not need to consider the relief alternatively requested. We do not find the judgment's language inconsistent with judicial

review of an agency order. We hold that if the trial court erred in failing to grant the Commission's motion to sever OFHA's cause of action for declaratory relief, such error was harmless; this is especially true in light of our disposition of the other points of error. The Commission's third point of error is overruled.

In its second point of error the Commission contends that the district court erred in failing to grant the Commission's motion to strike the interventions of C & H, Gypsum and OFHA. The Commission notes that these parties were not involved in the Commission hearing (on the motion to participate in the tariff) and that none of the three filed a motion for rehearing before the Commission. We need not consider the arguments advanced for and against this point of error, since we hold that if the trial court did err in refusing to strike the interventions, such error is harmless in view of our disposition of the other points of error. The second point of error is overruled. The first point of error was disposed of by the Supreme Court.

The judgment of the trial court is reformed so as to conform with this opinion and, as reformed, is affirmed.