TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-10-00526-CV




Office of Public Utility Counsel and the Public Utility Commission of Texas, Appellants


v.


Texas-New Mexico Power Company, Appellee




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. D-1-GN-09-000071, HONORABLE RHONDA HURLEY, JUDGE PRESIDING



 O P I N I O N



 This is an administrative appeal of a final order of the Public Utility Commission
(the "Commission") in a contested case involving Texas-New Mexico Power Company's
("TNMP") revised competition transition charge ("CTC") interest rate. TNMP filed a suit for
judicial review of the Commission's decision, which determined the effective date of the revised
interest rate. The Office of Public Utility Counsel ("OPC") intervened in support of the
Commission's order. (1) The trial court reversed the Commission's order, and the Commission and
OPC appealed. We will reverse the trial court's order and render judgment affirming the
Commission's order.


FACTUAL AND PROCEDURAL BACKGROUND

 TNMP is a transmission and distribution utility that was "unbundled" from a
vertically integrated utility in the restructuring of the Texas market. See generally Tex. Util.
Code Ann. §§ 11.001-66.017 (West 2007 & Supp. 2010) (hereinafter "PURA"). As a regulated
utility, TNMP provides services at rates that remain subject to traditional cost-of-service
regulation by the Commission under PURA. See id. One of the rates and charges set by the
Commission is TNMP's CTC, the mechanism through which the utility recovers its stranded
costs, with interest. (2)

 In TNMP's true-up case, the Commission determined the rate of interest to be
applied to TNMP's stranded costs from their inception (January 1, 2002, when competition
began) to the date of the true-up. In its final true-up order, issued July 22, 2005, the Commission
established a stranded-cost balance for TNMP of $128,820,365 as of January 1, 2002. The
Commission added interest (carrying charges) of $39,166,214 to these stranded costs, calculated
at an annual rate of 10.93%. The final net stranded-cost recovery authorized by the Commission
was $110,603,855. See State v. Public Util. Comm'n, 246 S.W.3d 324, 331 (Tex. App.--Austin
2008, pet. filed).

 On November 4, 2005, TNMP initiated Docket No. 31994 (the "CTC Docket"),
which involved the carrying-charge rate on its CTC as well as a number of other issues. The
Commission referred the matter to an administrative law judge ("ALJ") at the State Office of
Administrative Hearings ("SOAH"). Before the CTC Docket proceeded to a hearing on the
merits, however, TNMP and all parties except the Cities entered into a non-unanimous
stipulation (or indicated that they did not oppose the stipulation). (3) Of relevance to this appeal,
the NUS provided that "[i]nterest on the stranded cost balance beginning July 22, 2005 will be
10.93%. That interest rate will prevail unless and until the Commission validly adopts a new
rule [regarding the interest rate] at which time the terms of the new rule will apply."

 In fact, during the pendency of the CTC Docket, the Commission was in the
process of amending its true-up rule, 16 Tex. Admin. Code § 25.263, which provided a new
formula for computing the stranded-cost interest rate. (4) The Commission completed the
rulemaking after the NUS was signed and filed but before the NUS went before the Commission
for review. The effective date of the new rule was July 20, 2006.

 After a hearing on the NUS, the ALJ recommended in its proposal for decision
that the Commission reject the stipulation. In its final order dated November 2, 2006 (the "CTC
Order"), the Commission declined to adopt the ALJ's proposal for decision and instead adopted
the NUS. In the CTC Order, the Commission made reference to the new rule and determined
that, "[u]nder the terms of the NUS, the new version of the rule sets the interest rate on the
stranded-cost balance from the date the rule is effective." In addition, the Commission made the
following fact findings:


16A. The NUS sets the interest rate of 10.93% until the Commission validly
adopts a new rule, at which time the terms of the new rule will apply.


. . . .


41. The NUS sets an interest rate of 10.93%, which is subject to change when
the Commission validly adopts a new rule setting the interest rate.


41A. P.U.C. Subst. R. 25.263(l)(3) was revised, effective July 20, 2006, and
establishes a formula for determining interest on post-true-up balances.



 In Ordering Paragraph No. 1 of the CTC Order, the Commission approved TNMP's
application to set the CTC "as modified by the NUS." The Commission further ordered TNMP
to file a tariff that conformed to the decisions contained in the CTC Order and that updated the
interest amounts approved therein. TNMP did not appeal from the Commission's final CTC
Order.

 In accordance with the new rule, which required each transmission and distribution utility
to file an application to adjust the carrying costs on its CTC within 30 days of the effective date
of the rule, TNMP initiated Docket No. 33106 (the "Interest Rate Docket"). In its final order in
the Interest Rate Docket, the Commission approved TNMP's recommended CTC interest rate
revision of 8.31%. This Court considered the ratepayer cities' challenges to the 8.31% interest
rate in City of Dickinson v. Public Utility Commission, 284 S.W.2d 449 (Tex. App.--Austin
2009, no pet.), ultimately affirming the Commission's determination, see id. at 454. Thereafter,
TNMP initiated the proceeding that is the subject of this appeal, Docket No. 35038 (the "Tariff
Docket").

 The instant dispute arising from the Tariff Docket proceedings concerns exactly when the
new 8.31% interest rate went into effect. TNMP argued that the new rate would only go into
effect on the entry of a final order in the Tariff Docket, and that any earlier effective date would
result in impermissible retroactive ratemaking. The Commission Staff took the position that the
new rate went into effect on December 27, 2007--the date claimed by Staff as the effective date
of the Commission's final decision in the Interest Rate Docket. OPC urged that, in accordance
with the CTC Order adopting the NUS, the new rate went into effect on the effective date of the
revised rule, July 20, 2006.

 At the Tariff Docket hearing, each party introduced evidence in support of its respective
position. The ALJ's proposal for decision recommended the Commission Staff's proposed date. 
The Commission declined to adopt the ALJ's interpretation, however, and instead concluded that
the CTC Order had adopted the agreement of the parties regarding the effective date of the
interest rate change and applied the revised interest rate from July 20, 2006, when the revised
rule went into effect. It memorialized these findings by an order dated October 22, 2008 (the
"Effective Date Order"). TNMP sought judicial review of the Effective Date Order, and the trial
court reversed "the Commission's decision to set a retroactive effective date [of] July 20, 2006
for the 8.31% carrying charge rate." The Commission and OPC now appeal.


DISCUSSION

 On appeal, the Commission and OPC argue that, in issuing the Effective Date Order, the
Commission properly interpreted its 2006 CTC Order to require that the revised-rule interest rate
apply going forward from July 20, 2006. They urge that because this interpretation of the CTC
Order is reasonable and supported by the language of that prior order, this Court should defer to
the Commission's interpretation in construing the Effective Date Order under review.


Standard of Review

 This case concerns a suit for judicial review of a final agency decision in a contested case. 
In general, we review the Commission's final order under the substantial evidence standard of
review described in section 2001.174 of the Texas Administrative Procedure Act. See Tex. Util.
Code Ann. § 15.001 (West 2007); Tex. Gov't Code Ann. § 2001.174 (West 2008). Under the
substantial evidence rule, we give significant deference to the agency in its field of expertise. 
Railroad Comm'n v. Torch Operating Co., 912 S.W.2d 790, 792 (Tex. 1995); AEP Tex. North
Co. v. Public Util. Comm'n, 297 S.W.3d 435, 447 (Tex. App.--Austin 2009, pet. denied). We
presume that the Commission's order is supported by substantial evidence, and the complaining
parties have the burden to overcome this presumption. City of El Paso v. Public Util. Comm'n,
883 S.W.2d 179, 185 (Tex. 1994).

 Any questions of statutory construction are reviewed de novo, although an agency's
interpretation of the statute it administers is entitled to serious consideration so long as it is
reasonable and does not conflict with the statute's language. First Am. Title Ins. Co. v. Combs,
258 S.W.3d 627, 631-32 (Tex. 2008). A court applying the substantial evidence rule may
reverse the agency's order when the agency has made a prejudicial error of law, including a
violation of a constitutional or statutory provision, or when the order is "arbitrary or capricious
or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex.
Gov't Code Ann. § 2001.174(2).

 In construing orders of an administrative agency, we apply the same rules as when we
interpret statutes; the ultimate object of construction is to ascertain the intent of the
administrative body. Railroad Comm'n v. Home Transp. Co., 670 S.W.2d 319, 325 (Tex.
App.--Austin 1984, no writ); see Boswell v. Brazos Elec. Power Co-op., Inc., 910 S.W.2d 593,
599-600 (Tex. App.--Fort Worth 1995, writ denied); Armak Tex. Movers, Inc. v. Railroad
Comm'n, 797 S.W.2d 383, 388 (Tex. App.--Austin 1990, no writ); Airport Coach Serv., Inc. v.
City of Fort Worth, 518 S.W.2d 566, 574 (Tex. Civ. App.--Tyler 1974, writ ref'd n.r.e.) (op. on
reh'g). Because an administrative agency is a creature of the legislature, it possesses "only those
powers that the Legislature expressly confers upon it" and "any implied powers that are
reasonably necessary to carry out the express responsibilities given to it by the Legislature." 
Public Util. Comm'n v. City Pub. Serv. Bd., 53 S.W.3d 310, 315 (Tex. 2001). An agency may
not, however, "in the guise of implied powers, exercise what is effectively a new power, or a
power contrary to a statute, on the theory that such exercise is expedient for the agency's
purpose." CenterPoint Energy Entex v. Railroad Comm'n, 208 S.W.3d 608, 615 (Tex.
App.--Austin 2006, pet. dism'd). Therefore, any questions regarding the scope of the agency's
authority must be resolved in view of the statutory language conferring that authority, see In re
City of Georgetown, 53 S.W.3d 328, 331 (Tex. 2001), which we review de novo, see City of San
Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003).


The Effective Date Order Properly Interprets the CTC Order

 In the Effective Date Order, the Commission determined that its prior CTC Order, by
"adopting the agreement of the parties in the NUS," established the effective date of TNMP's
revised CTC interest rate as July 20, 2006. As evidence that this was in fact its prior
determination, the Commission pointed to findings of fact 41 and 41A in the CTC Order, and
made the following additional findings of fact:


8. The non-unanimous settlement (NUS) adopted by the Commission in
Application of TNMP Power Company to Adjust the Competition
Transition Charge Pursuant to PURA § 39.262(g), Docket No. 31994
(Nov. 2, 2006), states in Article II, paragraph D as follows: "Interest on
the stranded cost balance beginning July 22, 2005 will be 10.93%. That
interest rate will prevail unless and until the Commission validly adopts a
new rule at which time the terms of the new rule will apply."


9. In adopting the NUS, the Commission stated in its order [the CTC Order]
that "[u]nder the terms of the NUS, the new version of the rule sets the
interest rate on the stranded-cost balance from the date the rule is
effective." Docket No. 31994, Order at 4 (Nov. 2, 2006). [Emphasis in
original.]


10. Finding of fact 41 in the Commission's order in Docket No. 31994 states: 
"The NUS sets an interest rate of 10.93%, which is subject to change
when the Commission validly adopts a new rule setting the interest rate."


11. Finding of fact 41A in the Commission's order in Docket No. 31994
states: "P.U.C. Subst. R. 25.263(l)(3) was revised, effective July 20,
2006, and establishes a formula for determining interest on post-true-up
balances."


Based on these findings, the Commission concluded in the Effective Date Order that, "[p]ursuant
to the non-unanimous settlement and the Commission's order adopting that settlement . . . , the
effective date of a new interest rate on CTC balances revised pursuant to P.U.C. Subst. R.
25.263(l)(3) (effective July 20, 2006), is the effective date of that rule."

 In its suit for judicial review of the Effective Date Order, TNMP challenged the
Commission's conclusion that the CTC Order had adopted July 20, 2006 as the effective date for
the new interest rate, characterizing it as an "egregious misconstruction of the NUS (and the
2006 CTC Order)." According to TNMP, the parties to the NUS agreed only that the "terms" of
the new rule would apply when the Commission adopted a new rule. TNMP further asserts that
because the CTC Order simply repeated the agreement of the parties to the NUS, the Effective
Date Order "amounted to an amendment of [the] 2006 CTC Order," allowing the Commission to
confer itself the authority to set a "retroactive" effective date.

 The Commission argues that the CTC Order represents the Commission's approval of the
parties' NUS. We agree. Thus, in adopting the NUS, the Commission was entitled to, and did,
interpret the effective-date language contained in the NUS and to formulate a reasonable remedy
to effectuate the terms of that agreement. See AEP Tex. North, 297 S.W.3d at 447 (stipulation
and agreement entered into by parties lost its character as private contract and assumed character
of administrative order when it became basis for Commission's decision) (citing In re Entergy
Corp., 142 S.W.3d 316, 323-24 (Tex. 2004)); see also Public Util. Comm'n v. Southwestern Bell
Tel. Co., 960 S.W.2d 116, 119-20 (Tex. App.--Austin 1997, no pet.) (PURA confers on
Commission power to accept and act upon agreement between parties, and power to interpret
agreement when dispute subsequently arises). Therefore, our inquiry must concern not the
language of the NUS itself, but the interpretation of the NUS that the Commission adopted and
memorialized in the CTC Order (from which TNMP never appealed) and subsequently
interpreted in the Effective Date Order. See City of Abilene v. Public Util. Comm'n, 146 S.W.3d
742, 747 & n.7 (Tex. App.--Austin 2004, no pet.) ("Agencies are entitled to interpret their own
orders, for administrative purposes, so long as the agency does not use the occasion to interpret
as a means to amend the prior order.") (citing Home Transp. Co., 670 S.W.2d at 325); see also
Chocolate Bayou Water Co. & Sand Supply v. Texas Natural Res. Conservation Comm'n, 124
S.W.3d 844, 853 (Tex. App.--Austin 2003, pet. denied) (prohibiting collateral attack on final
agency order after time for appeal has passed). And in construing the Effective Date Order,
which in turn construes the CTC Order, we must give "great weight" to the Commission's
interpretation, just as we give great weight to an agency's interpretation of its own rules and
regulations. AEP Tex. North, 297 S.W.3d at 447.

 Accordingly, we conclude that at the time it issued the CTC Order, the Commission
interpreted the NUS to require the interest rate to change "from the date the [new] rule is
effective," and that such an interpretation was reasonable. The CTC Order's fact findings and
ordering paragraphs are consistent with that conclusion, which is further bolstered by the
language in the CTC Order (quoting the NUS) that "unless and until the Commission validly
adopts a new rule," the former 10.93% rate would apply. As the Commission points out, the
"unless-and-until language" can reasonably be construed to mean that the 10.93% rate "ceases to
apply on the date the Revised Rule becomes effective. Thus, if the revised rate does not apply as
of that date, there is no interest rate for stranded costs in the interim." See Tex. Gov't Code Ann.
§ 311.023(5) (West 2005) (courts may consider "consequences of a particular construction"
when construing statutes); AEP Tex. North, 297 S.W.3d at 447 (courts construe orders of
administrative agencies according to same rules as when interpreting statutes) (citing Home
Transp. Co., 670 S.W.2d at 325).

 Read together, the relevant portions of the CTC Order, including the findings of fact,
comport with the Commission's conclusion in the Effective Date Order that the Commission had
intended the effective date of the revised rate to be July 20, 2006, and thus set the new interest
rate as of that date. Therefore, because there is no inconsistency between the CTC and Effective
Date Orders, the Commission did not improperly "amend" the prior order by its subsequent
interpretation. See City of Abilene, 146 S.W.3d at 747 (recognizing that agency is entitled to
interpret its own order, so long as it does not use occasion as means to amend prior order). (5) 
TNMP maintains, however, that the Commission's interpretation of its prior order is
unreasonable and should not be adopted because it would result in retroactive ratemaking. 
Specifically, TNMP argues that retroactive ratemaking occurred when the Commission
recognized an effective date for the CTC revised interest rate that was earlier than the date on
which the revised interest rate was numerically calculated. We disagree.


The Commission's Interpretation Does Not Result in Retroactive Ratemaking

 We note from the outset that "[t]he rule against retroactive ratemaking is often
misunderstood and misapplied." State v. Public Util. Comm'n, 883 S.W.2d 190, 199 (Tex.
1994). The rule prohibits the Commission from setting future rates to allow a utility to recoup
past losses or to refund to customers excess utility profits. Id. "Restated, the rule prohibits a
utility commission from making a retrospective inquiry to determine whether a prior rate was
reasonable and imposing a surcharge when rates were too low or a refund when rates were too
high." Id. In short, "the rule against retroactive ratemaking only requires that [utilities], the
Commission, and courts abide by an administrative determination that a particular rate is just and
reasonable." CenterPoint Energy Entex, 208 S.W.3d at 623.

 Here, the rate at issue was set by the 2006 CTC Order. Prior to that order, there were no
CTC rates set for TNMP and TNMP was not authorized to charge a CTC. (6) Therefore, as the
Commission argues, there could be no retrospective inquiry into the reasonableness of any CTC
rates and, thus, no recoupment of past losses or refund of excess profits in those rates. Cf. State,
883 S.W.2d at 199. The change in the interest rate resulted from the prospective application of
the formula adopted under the Commission's new rule, not from an evaluation of the adequacy,
or inadequacy, of the stranded cost interest rate established for TNMP in its true-up case. (7) The
Effective Date Order does not amount to a determination by the Commission that prior rates
were unreasonable; rather, it merely implemented the CTC Order. Because the Commission did
not engage in retroactive ratemaking in the CTC Docket, the Effective Date Order did not result
in retroactive ratemaking.

 Finally, TNMP argues that the Commission's order adopting amended rule 25.263(l)(3)
prohibits the Commission from setting an effective date for the revised interest rate that is earlier
than the date of an order determining what the rate would be. In that order, the Commission
recognized that the CTC is a "rate" as defined under PURA, and that PURA authorizes the
Commission to change rates on a prospective basis. Having determined, however, that the CTC
Order revised TNMP's CTC interest rate prospectively from the effective date of the amended
rule, we find no inconsistency between the order adopting the amended rule and the Effective
Date Order's implementation of the CTC Order.

 In light of the foregoing, we sustain the Commission's and OPC's issues on appeal.


CONCLUSION

 Having sustained the Commission's and OPC's issues on appeal, we reverse the judgment
of the trial court and render judgment affirming the Commission's order.



 

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin


Reversed and Rendered


Filed: May 11, 2011
1. Texas Industrial Energy Consumers and the Cities of Dickinson, Friendswood, La Marque,
League City, Lewisville, and Texas City (the "Cities") also intervened in the proceedings below. 
The Cities have filed an amicus curiae brief in this Court in support of the Commission's
determination.
2. See generally State v. Public Util. Comm'n, No. 08-0421, 2011 WL 923949, at *1-2 (Tex.
Mar. 18, 2011) (reviewing statutory scheme). "Stranded costs" refer to the portion of the book value
of a utility's generation assets that is projected to be unrecovered through rates that are based on
market prices. Id.; see also City of Corpus Christi v. Public Util. Comm'n, 51 S.W.3d 231, 237
(Tex. 2001).
3. The parties variously refer to this agreement as a non-unanimous stipulation and a non-unanimous settlement. For clarity, we will refer to it as the "NUS."
4. Specifically, the Commission proposed an amendment to rule 25.263(l)(3) to change the
interest rate on the utilities' CTC balances from the utility's cost of capital established in the utility's
unbundled cost-of-service case to the utility's most recently authorized or reported cost of debt, and
to require the transmission and distribution utilities, like TNMP, to apply for revised carrying
charges on their CTC balances. See City of Dickinson v. Public Util. Comm'n, 284 S.W.2d 449, 451
(Tex. App.--Austin 2009, no pet.).
5. TNMP argues that we should consider the fact that it continued to collect interest at the
10.93% rate when it filed its compliance tariff in November 2006, after the CTC Order was issued,
and apparently no other party objected. The intent or interpretation of TNMP, or of the other
participants in the CTC Docket, does not control our analysis, however. Indeed, the most that could
be inferred from TNMP's subsequent conduct and the alleged inaction on the part of the other
parties is that the effective date language in the CTC Order was ambiguous. Assuming without
deciding that the CTC Order was ambiguous, we would be constrained to adopt the interpretation
of the Commission so long as it was not unreasonable. Fiess v. State Farm Lloyds, 202 S.W.3d 744,
747-48 (Tex. 2006). As we will address further, the Commission's interpretation is reasonable and
does not, as TNMP asserts, result in impermissible retroactive ratemaking.
6. This fact distinguishes the instant case from that of a "similarly situated" utility that TNMP
argues was treated more favorably by the Commission. We also note that the effective-date
language of the NUS adopted by the Commission in TNMP's CTC Order is unique to this case, and
controls the outcome here. See Application of AEP Texas Central Company For a Competition
Transition Charge Pursuant to PUC Subst. R. 25.263(n), Docket No. 32758, available at
http://interchange.puc.state.tx.us/WebApp/Interchange/application/dbapps/login/pgLogin.asp at
Docket No. 32758, Item 189.
7. Moreover, as the Commission and OPC point out, no statute or rule requires the CTC
revised interest rate to have been numerically quantified before the effective date of the revised rate. 
On the contrary, the history of stranded-cost recovery illustrates that interest charges become
effective long before the date principal stranded cost amounts or stranded cost interest rates are ever
quantified.